# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **NICHOLAS BUCHICCHIO** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 22-CV-147-BAJ-EWD** |
| | * | |
| **JAMES LEBLANC, KIRT GUERIN,** | * | **JUDGE BRIAN A. JACKSON** |
| **CHELSEA JONES, STEVEN JUGE,** | * | |
| **MIKE CAZES, AND DOES 1-10** | * | **MAG. JUDGE ERIN WILDER-DOOMES** |

*************************************************************************

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### *FIRST AMENDED COMPLAINT FOR DAMAGES* [21]

**MAY IT PLEASE THE COURT:**

James LeBlanc, individually and in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections (DPSC) is entitled to dismissal from this suit. The claims for prospective equitable relief in Plaintiff's "First Amended Complaint for Damages"[1], Doc. 21, are subject to dismissal for lack of subject matter jurisdiction. The claims for monetary relief are subject to dismissal for failure to state a claim upon which relief can be granted.

## I.    All claims for equitable relief should be dismissed for lack of jurisdiction.

This Court lacks subject matter jurisdiction to award declaratory relief, injunctive relief, and any other equitable (non-monetary) relief because (1) Secretary LeBlanc in his official capacity is entitled to sovereign immunity from suit and (2) Plaintiff lacks standing to sue for equitable relief regardless of the capacity in which the Secretary is sued.

### A.  Standard of Review – Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

The absence of subject matter jurisdiction over some of Plaintiff's claims is evident on the face of the FAC.

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case.

---

[1] Hereinafter, Plaintiff's First Amended Complaint for Damages will be referred to as "FAC".

Fed. R. Civ. P. 12(b)(1). … The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citation omitted). When reviewing a "facial attack" on jurisdiction, the well-pleaded factual allegations of the Complaint are accepted as true and the Court evaluates the sufficiency of those allegations. *Isom v. Louisiana Off. of Juv. Just.*, No. CV 21-00013-BAJ-SDJ, 2021 WL 5763560, at *2 (M.D. La. Dec. 3, 2021) (citing *Paterson v. Weinberger*, 644 F.2d 521, 524 (5th Cir. 1981)).

**B. Louisiana's sovereign immunity bars Plaintiff's claims for equitable relief.**

Plaintiff sues Secretary LeBlanc individually and "in his official capacity solely to the extent this action seeks prospective equitable relief under federal law." Doc. 21, ¶29. In the "Relief Requested" section of the FAC, Plaintiff seeks declaratory and injunctive relief against Secretary LeBlanc "in his individual and official capacities." *Id.* at ¶152(a), (g). The official capacity claims are barred by sovereign immunity.

"[Plaintiff] has the burden at all times to establish federal jurisdiction, and a claim barred by sovereign immunity lies outside federal courts' subject-matter jurisdiction." *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1023 (5th Cir. 2022) (internal citations omitted). Sovereign immunity, therefore, may be examined under Rule 12(b)(1). *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020) (citing *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996)).

> "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart,* —— U.S. ——, 131 S.Ct. 1632, 1637, 179 L.Ed.2d 675 (2011). Accordingly, absent a waiver or valid abrogation, "federal courts may not entertain a private person's suit against a State." *Id.* at 1638.

*Morris v. Livingston*, 739 F.3d 740, 745–46 (5th Cir. 2014) (footnote omitted). Supreme Court jurisprudence requires federal courts "look to whether the sovereign is the real party in interest to

determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290, 197 L. Ed. 2d 631 (2017).

DPSC is an executive agency of the State of Louisiana. LeBlanc is sued in his official capacity as the Secretary of DPSC. Doc. 21, ¶29. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (internal citation omitted). "Under *Ex parte Young*, 209 U.S. 123, 167–68 (1908), a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams*, 954 F.3d at 736 (citations omitted).

> There are three basic elements of an *Ex parte Young* lawsuit. The suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). An *Ex parte Young* suit must also seek equitable relief—relief that is "declaratory or injunctive in nature and prospective in effect." *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)[.] … "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). Therefore, in order to determine whether a suit complies with the requirements of *Ex parte Young*, the "court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Id.*

*Williams*, 954 F.3d at 736.  (additional internal citations and footnote omitted).

Plaintiff does not seek prospective relief to redress ongoing conduct. The *Ex parte Young* exception is 'focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past.'" *Williams*, 954 F.3d at 737 (*quoting Papasan v. Allain*, 478 U.S. 265, 277) (1986)).  Thus "[A] complaint **must** allege that the defendant **is violating** federal law, not

simply that the defendant has done so." *NiGen*, 804 F.3d at 394 (emphasis added, footnote and citation omitted).

The requirement under *Ex parte Young* that Plaintiff plead "that the defendant *is violating federal law*" is "similar but not identical to the Article III minimum for standing to request an injunction, which requires ongoing harm or a threat of imminent harm." *NiGen Biotech*, 804 F.3d at 394, n. 5 (emphasis in original). "These doctrines are both threshold questions, […], and do not consider the action's merits." *Air Evac*, 851 F.3d at 520.

The alleged conduct at issue in this case occurred during the detention of the Plaintiff, which ended May 25, 2021. Plaintiff seeks entry of "Judgment against Defendants for Plaintiff's causes of action for the overdetention from March 3, 2021 to May 25, 2021." Doc. 21, ¶152(b). See also Doc. 7, p. 12 ("Plaintiff is suing only regarding the third period of overdetention", which was "from the March 3, 2021 hearing until his release on May 25, 2021.") The Plaintiff is not seeking relief to redress ongoing conduct, the *Ex parte Young* exception does not apply, and the claims against LeBlanc in his official capacity are barred by sovereign immunity.

### C.  Plaintiff lacks standing to sue for prospective equitable relief.

The same standing analysis governs all of Plaintiff's claims for equitable (non-monetary) relief including the requests for declaratory, injunctive, and other undefined equitable relief.  *See e.g. Stringer v. Whitley*, 942 Fed.3d 715 (5th Cir. 2019) (evaluating Article III standing by applying the same standard to requests for injunctive and declaratory relief). "The Constitution gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.' " Art. III, § 2. That power includes the requirement that litigants have standing." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). "This is a 'bedrock requirement.' " *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454

U.S. 464, 471 (1982)).

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citations omitted).

"Standing is determined as of the time that suit is filed." *Energy Mgmt. Corp. v. City of*

*Shreveport*, 397 F.3d 297, 302 (5th Cir. 2005) (citation omitted).

> Mootness is "the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.

*Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). In *Friends of the*

*Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000), the Supreme Court

specifically acknowledged the difference between standing and mootness and the courts'

"obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the

litigation." *Laidlaw*, 528 U.S. at 180.

Plaintiff fails to establish standing to sue for equitable relief at the outset of this litigation

because any alleged injury is unlikely to be redressed by a favorable ruling. Plaintiff is not

currently incarcerated. Doc. 21, p. 3, ¶21 (alleging Plaintiff was released from custody May 25,

2021). Because Plaintiff was released from custody before suit was filed, he did not have standing

to sue for equitable relief at the time suit was filed. See *Coleman v. Lincoln Par. Det. Ctr.*, 858

F.3d 307, 309 (5th Cir. 2017) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)).

Additionally, as any future harm depends on a future arrest, extradition to Louisiana,[2] and commitment to DPSC custody, the possibility of future harm is too speculative and remote to support Article III standing. See *McNeal v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV 18-736-JWD-EWD, 2020 WL 7059581, at *9 (M.D. La. Dec. 2, 2020) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)).  Judge deGravelles succinctly summarized applicable jurisprudence in the *McNeal* case:

> The injury must be "an invasion of a legally protected interest" that is "concrete and particularized and "actual or imminent, not conjectural or hypothetical" for a court to confer Article III standing." *Lujan* [*v. Defenders of Wildlife*], 504 U.S. [500,] 560 [(1991)]. A plaintiff must show that "they face a palpable present or future harm, not harm that is 'conjectural or hypothetical.' " *Levy v. Louisiana Dep't of Pub. Safety & Corr.*, 371 F. Supp. 3d 274, 284 (M.D. La. 2019) (deGravelles, J.) (quoting *Perez* [*v. Doctors Hosp.*], 624 F. App'x [180,] 183 [(5th Cir. 2015) (per curiam)]). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse affects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 95 (1983); *see Plumley v. Landmark Chevrolet, Inc.* 122 F.2d 308, 312 (5th Cir. 1997). "A plaintiff seeking injunctive relief based on an alleged past wrong must show that there is reason to believe that he would directly benefit from the equitable relief sought." *Mosley v. Midas Worthington, LLC*, No. 19-75, 2020 WL 113350, at *3 (M.D. La. Jan. 9, 2020) (deGravelles, J.) (internal citations omitted). "Past wrongs can be considered, however, as evidence of an actual threat or repeated injury." *Perez*, 624 F. App'x at 183. "Future injuries can provide the basis for standing, but they 'must be certainly impending to constitute injury in fact,' and '[a]llegations of possible future injury are not sufficient.' An injury based on a 'speculative chain of possibilities' does not confer Article III standing." *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)).

*McNeal*, 2020 WL 7059581, at *8.

A purely speculative chain of events must occur for the Plaintiff to be subject to the same alleged inaction that is the subject of this lawsuit.  Other than the allegation that he was allegedly injured in the past, there are no factual allegations pleaded which show a non-speculative, non-

---

[2] Plaintiff is a resident of Collier County, Florida. Doc. 21, ¶28.

hypothetical, "concrete and particularized" and "actual or imminent" threat of being subjected to the same inaction again in the future.

To summarize, the Plaintiff's complaint does not satisfy his burden of establishing standing to sue at the outset of this litigation. Therefore, the claims for prospective equitable relief should be dismissed without prejudice for lack of subject matter jurisdiction.

## II. Plaintiff's claims for money damages should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### A. Standard of Review – Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

"Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's 'failure to state a claim upon which relief can be granted.' Thus, claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law.' " *Jackson v. United States Dep't of Hous. & Urb. Dev.*, 38 F.4th 463 (5th Cir. 2022) (citation omitted)).

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. We accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. See *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

*Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 295 (5th Cir. 2022).

Ordinarily, the Court cannot consider documents presented in support of a Motion to Dismiss, which were not attached to the Complaint. However, an important exception to that rule has been recognized by the Fifth Circuit for documents that are "referred to in the plaintiff's complaint and are central to her claim.' " *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)).

Secretary LeBlanc attaches hereto as Exhibit 1 the Uniform Commitment Order signed by Judge Mary Doggett of the 9th Judicial District Court for the Parish of Rapides on January 21, 2020.  This Sentencing Order, is referred to in Plaintiff's FAC at Paragraphs 4-5, 8-14, 25, and 40-42.  Attached as Exhibit 2 is the March 3, 2021 Order of Judge Doggett, which granted Plaintiff's Motion for an award of additional jail credits.  The March 3, 2021, order is referred to in Paragraphs 2, 17-19, 70, 73-80 of the FAC.

The Sentencing Order and March 3, 2021 Order are central to Plaintiff's claim that he was falsely imprisoned Plaintiff in violation of the U.S. Constitution, Louisiana Constitution, and Louisiana tort law.  See e.g. Doc. 21, p. 19 ¶130 (alleging "Mr. Buchicchio was overdetained despite Judge Doggett's order that entitled Mr. Buchicchio to immediate release on January 17, 2020").  See also *Id*. at ¶73-80 (regarding the March 3, 2021 Order).

B. **Statement of the Factual Allegations**

Generally, Plaintiff alleges he was lawfully convicted and sentenced to DPSC custody but,[3] he completed his term of imprisonment and was thereafter unlawfully incarcerated or "overdetained".  All of the "counts" in Plaintiff's First Amended Complaint against Secretary Leblanc arise from a single set of factual allegations.  See Doc. 21, ¶121, 126, 131, 141.[4]  In this Statement of Factual Allegations, Secretary LeBlanc attempts to sift out the irrelevant facts to identify only those facts that pertain to the claims brought against him in this case.

---

[3] The Plaintiff is not challenging the legality of his conviction or the sentence to serve 7 years in prison with credit for time served as specified in the sentencing order (Ex. 1).  The Plaintiff, however, appears to be "seeking a judgment at odds with […] the State's calculation of time to be served in accordance with the underlying sentence." *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004).  That the Plaintiff is not specifically challenging the fact of his conviction or the general terms of his sentence does not end the *Heck* inquiry.  *Id*.

[4] Each count, except the first and eighth, incorporate the prior counts, which yields the inevitable conclusion that all factual allegations apply to all counts against LeBlanc. See *Thomas v. Univ. of Mississippi*, No. 3:18-CV-00062-GHD-RP, 2018 WL 6613807, at *5 (N.D. Miss. Dec. 17, 2018) (explaining that improper shotgun pleading "realleges and reincorporates by reference all of the factual allegations into each count. Thus, it is impossible to identify which facts support which cause of action.")

1. <u>The underlying sentence and Plaintiff's challenge to the computation of the amount of time he was supposed to serve under that sentence.</u>

On January 16, 2020, [5] Nicholas Buchicchio entered a guilty plea to ten (10) counts of theft under La. R.S. §14:67(B). [6]  On January 21, 2020, Judge Mary Doggett of the 9th Judicial District Court for the Parish of Rapides signed the Uniform Sentencing Commitment Order, which confirmed in writing that she had sentenced Plaintiff to DPSC custody to serve seven (7) years at hard labor.  Judge Doggett ordered "[t]his sentence shall be concurrent with any or every other sentence the offender is now serving"[7] and that "sentences on each count are to run concurrent with each other".  Judge Doggett further awarded Plaintiff credit for time served under La. C. Cr. P. 880.  Ex. 1.

Plaintiff alleges he served time in prison on a Florida offense from March 13, 2017, to May 6, 2019, Doc. 21, ¶34-36, and that Judge Doggett awarded him jail credit for the full amount of time served in Florida.  *Id.* at ¶39 (alleging Judge Doggett, "made it clear that Mr. Buchicchio was to receive credit for all the time he had already served, including the time he spent […] incarcerated in Florida.").  However, Article 880 expressly prohibits "overlapping jail credit, except in the instance of concurrent sentences and then only for time spent in jail on the instant felony."  La. C.Cr. P. 880(E).  In light of Article 880's prohibition of overlapping jail credit and the fact that Plaintiff was serving time on a different sentence in Florida, he was not entitled to credit for time served in Florida. The dispute about whether, at the time of his original sentencing, the Plaintiff was entitled to jail credit from Florida, is the Plaintiff's first challenge to the State's computation of the amount of time he was supposed to serve.

---

[5] Plaintiff throughout this case alleges he was sentenced on January 17, 2020.  However, the Uniform Sentencing Commitment Order indicates he was actually sentenced on January 16, 2020.  Exhibit 1.

[6] The Uniform Commitment Order signed by Judge Doggett on January 21, 2020, is attached hereto as Exhibit 1.

[7] The allegations of Plaintiff's complaint indicates that, as of January 21, 2020, Plaintiff was not serving any other sentence. See Doc. 21, p. 6, ¶36 (alleging Plaintiff completed his Florida sentence before he was transferred to Rapides Parish to stand trial on the theft charges).

To attempt to sort out his dispute about the amount of jail credit he was entitled to, Plaintiff filed a "Motion to Clarify/Modify Sentence – Clarification of Credit for Time Served", which was received by the Court on September 21, 2020 and subsequently set for hearing. Doc. 21, ¶61-62. Plaintiff argued that he was entitled to jail credit "from March 13, 2017". See *id.* at ¶30. But, when the Motion to Clarify/Modify was granted, Judge Doggett only awarded credit from October 16, 2017 – May 7, 2019. *Id.* at ¶70. See also Ex. 2. Despite Judge Doggett's ruling, Plaintiff argues in this Court that DPSC was required to give him jail credit from March 13, 2017. *Id.* at ¶40-42. Plaintiff's second challenge to his sentence computation arises from the dispute about whether Plaintiff was supposed to receive jail credits "from March 13, 2017" or the lesser amount of credit awarded by the Judge on March 3, 2021.

> 2. <u>This litigation allegedly only pertains to the period of detention from March 3, 2021 to May 25, 2021.</u>

Plaintiff avers, "[t]his case addresses the overdetention from March 3, 2021 to May 25, 2021". Doc. 21, ¶22. See also *id.* at ¶152(b). Thus, the relevant factual allegations pertain to the period of Plaintiff's incarceration from March 3, 2021 to May 25, 2021. Plaintiff alleges:

> In short, on March 3, 2021, a judge granted Mr. Buchicchio's motion for credit for time served. As soon as that motion was granted on March 3, 2021, he became eligible for immediate release. But the DOC didn't recalculate his time, and so he remained in custody until May 25, 2021.

Doc. 21, ¶2. In opposition to Defendants' first Motion to Dismiss, Plaintiff further explained, "there was a new court order on March 3, 2021 that Defendants failed to comply with, which began a new period of overdetention. […] It is that post-March, 3, 2021-court-order period of overdetention that is the basis for Plaintiffs' [sic] suit." Doc. 7, p. 13 (internal citations omitted).

> 3. <u>No period of detention before March 3, 2020 is at issue in this lawsuit.</u>

Plaintiff alleges he completed his sentence on January 16, 2020 based on the amount of days of jail credit and good time credit he claims he accrued prior to his sentencing. See Doc. 21,

¶4. Thus, Plaintiff concludes, he was constitutionally entitled to release from custody on the date of his sentencing. Doc. 21, ¶8; ¶112 ("Mr. Buchicchio's lawful sentence expired on January 17, 2020, and he should have been released that day"). Plaintiff was released on February 11, 2020. Doc. 21, p. 1, ¶4. *Id*. at ¶5. The period of alleged overdetention between January 16 and February 11, 2020 is <u>not</u> part of this lawsuit. See *id*. at ¶22.

Plaintiff alleges that, after he was released from custody on February 11, 2020, he moved to Florida, then took a trip to the U.S. Virgin Islands. *Id*. at p. 2, ¶6. Plaintiff alleges that, on June 20, 2020, after returning from the Virgin Islands, he was arrested in the Miami, Florida airport on a warrant for his arrest issued by DPSC. *Id*. ¶53-55. Plaintiff alleges "DOC's warrant claimed that Mr. Buchicchio had not yet completed his sentence, despite the Judge Doggett's January order that Mr. Buchicchio had served his time and should be immediately released." *Id*. at ¶8. *See also* ¶113. Plaintiff alleges he "was then detained for 11 months, by DOC at Hunt from mid 2020 until March 2021, and by DOC and Defendants Cazes and Juge at WBRWRC from March 2021 until his release in May 2021." *Id*. at ¶114. The alleged false imprisonment from June 20, 2020 to March 3, 2020, is not part of this lawsuit. *Id.* at ¶22.

4. <u>There are no factual allegations of personal or direct involvement of Secretary LeBlanc with Buchicchio's detention.</u>

Plaintiff seeks to hold Secretary LeBlanc liable for his incarceration from March 3, 2021 – May 25, 2021. There is <u>no</u> factual allegation in this lawsuit that James LeBlanc was personally or directly involved in the incarceration of the Plaintiff. The Plaintiff does not allege Secretary LeBlanc had actual personal knowledge of Nicholas Buchicchio, or of Buchicchio's incarceration. In this suit, LeBlanc is <u>not</u> sued for actions or inactions personally directed at the Plaintiff or at his specific detention. LeBlanc is only sued in his role as the Secretary of DPSC. See e.g. *id.* at ¶25; ¶116, ¶119, ¶125.

5.   The allegations against DPSC (a/k/a DOC)

Plaintiff alleges "James LeBlanc, and the Louisiana Department of Public Safety and Corrections, have exhibited a continuing pattern of overdetention." Doc. 21, p. 21, §E. Plaintiff's complaint contains numerous allegations against or about "DOC" [8], which is mentioned 54 times in the Amended Complaint.[9] DPSC is not a party to this action; Secretary LeBlanc is sued here personally. *Id.* at ¶29. The allegations that refer to "DOC" or "DOC (under the leadership of LeBlanc)"[10], do not plead facts against LeBlanc, personally. *Lewis*, 137 S. Ct. at 1291 (distinguishing official- from personal- capacity claims).

6.   The allegations against LeBlanc

Plaintiff alleges DPSC Secretary LeBlanc, "is the final policy maker for the Department." Doc. 21, ¶29. In Paragraphs 81 – 106 of the FAC, Plaintiff describes an alleged "continuing pattern of overdetention", which Secretary LeBlanc allegedly "has presided over and been aware of." The alleged "pattern of overdetention" has no causal relationship with DPSC's recalculation of Buchicchio's sentence after the March 3, 2021, hearing and, therefore, is irrelevant to this case. Doc. 21, ¶22.

Plaintiff alleges that, following the March 3, 2021, hearing, Judge Doggett entered a written minute entry granting his Motion to Clarify his sentence and ordering "that [he] receive credit for time served specifically while on detainer since the time of 10.16.2017 until 5.7.2019." Doc. 21, ¶70. See also Ex. 2. Plaintiff asserts that DPSC did not recalculate his sentence after the

---

[8] DOC is an outdated acronym referring to the "Department of Corrections" used by the Plaintiff instead of the acronym DPSC, which is used here by its Secretary.

[9] For example, Plaintiff alleges that, during the March 3, 2021 hearing, which was transcribed by a court reporter, "Judge Doggett was confused and frustrated by DOC's continued detention of Mr. Buchicchio and unambiguously directed DOC and Defendant Juge to immediately release him." Doc. 21 at ¶69. Plaintiff alleges DPSC did not follow that unambiguous direction given at the hearing, despite the absence of any allegation that any DPSC employee was present. *Id.*

[10] See e.g. Doc. 21 at ¶25; ¶116, ¶119, ¶125.

hearing, which delayed his release. Doc. 21, ¶2. There is no pleaded explanation for why DPSC did not recalculate his sentence. Therefore, there is no causal connection with any alleged policy.

**C. All claims against Secretary LeBlanc should be dismissed.**

1. Secretary LeBlanc is entitled to qualified immunity from suit under §1983 and the Louisiana Constitution.

Plaintiff alleges Secretary LeBlanc is liable under 42 U.S.C. §1983 and the Louisiana Constitution. Doc. 21, pp. 15-17 (Counts 1 and 2); pp. 20-21 (Count 6). The Louisiana Supreme Court declared, "the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983 require us to recognize a similar immunity for them under any action arising from the state constitution." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999) (quoting *Moresi v. Department of Wildlife and Fisheries,* 567 So.2d 1081, 1093 (La.1990)). Thus, the qualified immunity defense applies equally to Plaintiff's claims under the U.S. and Louisiana Constitutions.

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015) (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc)).

*a. Secretary LeBlanc did not violate Plaintiff's Constitutional Rights.*

Generally, Plaintiff alleges Secretary LeBlanc is liable for violating Plaintiff's rights under the Fourteenth Amendment and Louisiana's corresponding due process provision. It is unclear

13

why Plaintiff split that single claim into separate "counts".[11]  Count 1 explains the Fourteenth Amendment is implicated when a court orders a criminal defendant to be released and he is not released within a reasonable amount of time.  See Doc. 21, ¶110 (citing *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1968) (additional citation omitted).  Count 6 describes the legal standard for evaluating whether Secretary LeBlanc's alleged conduct violated the Fourteenth Amendment right identified in Count 1.  Doc. 21, ¶143 (alleging the deliberate indifference standard applies).  There is only a single due process claim against LeBlanc and it will be analyzed as such.

"A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation omitted).  As noted above, LeBlanc is not accused of any affirmative participation in Plaintiff's detention – he is sued only in his role as the Secretary of DPSC.

A supervisor may also be liable for failure to supervise or train if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter*, 659 F.3d at 446 (citation omitted). "Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference." *Id*.

### i.    *No Failure to Train or Supervise Claim is pleaded*

Plaintiff titles Count Six of his Amended Complaint "*Monell/Hinojosa* and Failure to Train/Supervise", which is lodged only against LeBlanc, individually.  Doc. 21, p. 20.  No facts

---

[11] Rule 10(b) of the Federal Rules of Civil Procedure states, in pertinent part, "[i]f doing so would promote clarity, each claim founded <u>on a separate transaction or occurrence</u> […] must be stated in a separate count".  (Emphasis added). Here, there is only one occurrence.

with regard to training or supervision are pleaded. Plaintiff offers the conclusion that "the widespread practices described in the preceding paragraphs were allowed to flourish because Defendant LeBlanc declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents." Doc. 21, ¶145.[12]   That allegation is insufficient to state a failure to train/supervise claim.  See *Connick v. Thompson*, 563 U.S. 51, 68 (2011) ("But showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability").  The Fifth Circuit explained:

> The standard applicable to failure to train allegations against supervisors is based on that for municipal liability. Thus, for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. In this inquiry, mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability.

*Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (internal footnote, quotation marks, and citations omitted).  The conclusory allegation that LeBlanc failed to train, supervise or discipline, is *per se* insufficient and any "training or supervision" claim should be dismissed.

> ii.    *Plaintiff fails to plead facts showing causation, as is required to support a policy claim.*

As stated above, a supervisory official may be held liable under § 1983 if "he implements unconstitutional policies that **causally result** in the **constitutional injury**." *Porter*, 659 F.3d at 446 (emphasis added).  Plaintiff confuses cause with effect.  "Overdetention" is the alleged effect – it is the alleged constitutional injury.  Plaintiff must separately plead and prove causation.

Plaintiff alleges, "[t]he polices, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately

---

[12] In paragraph 102 of the Amended Complaint, Plaintiff alleges there has not been any "discipline or adverse employment activity for DOC employees who have incorrectly computed sentences or release dates[…]". Doc. 21, ¶102. With regard to the period of detention at issue in this case, there is no allegation that Plaintiff's sentence was computed incorrectly. *Id*. at ¶2.

caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above." Doc. 21, ¶144 (citation omitted). That conclusory allegation does not satisfy Plaintiff's burden of pleading causation.

The Plaintiff does not challenge a formal written policy of DPSC. *Compare Monell*, 436 U.S. at 713. Instead, Plaintiff alleges "[t]he above-described widespread practices […] constitute the *de facto* policy of Defendant LeBlanc". Doc. 21, ¶143. It is <u>not clear</u> from the pleading what "widespread practices" Plaintiff referred to. The word "practices" does not appear in the First Amended Complaint until paragraph 142. Therein, Plaintiff states "[t]he misconduct described above was caused by the policies, practices, and customs of Defendant LeBlanc, in that his employees and agents regularly overdetain persons who are subject to release." Doc. 21, ¶142. Alleged overdetention cannot be the policy/practice/custom because overdetention is the alleged effect – not the cause. Plaintiff's circular and confusing allegations within the "counts" do not sufficiently allege causation.

This Court must, therefore, sift through Plaintiff's First Amended Complaint to attempt to identify any "practices", which were vaguely referred to in Paragraphs 142-145 of the FAC. Plaintiff alleges (1) that DPSC did not timely recalculate Plaintiff's sentence after the March 3, 2021 hearing, Doc. 21 at ¶2, and (2) that DPSC was directly ordered by the Judge during the March 3 hearing to release the Plaintiff but intentionally did not follow that order. *Id*. at ¶116.

Beginning with the second allegation, the Amended Complaint does not contain facts describing a practice of ignoring court orders, and there are no allegations that Secretary LeBlanc caused anyone to ignore a court order.

Regarding the claim that DPSC did not recalculate Plaintiff's sentence after the March 3 hearing until after Plaintiff's counsel contacted DPSC, Plaintiff does not explain the delay or how LeBlanc caused the delay.

In summary, Plaintiff is required to plead facts showing causation. He completely failed to do so. Therefore, LeBlanc is entitled to qualified immunity, and to dismissal of Plaintiff's suit with prejudice.

### b.  *Plaintiff fails to plead facts sufficient to show deliberate indifference.*

Plaintiff concedes that the deliberate indifference standard governs his claim that LeBlanc violated his due process rights. Doc. 21, ¶143. Deliberate indifference is "is a high bar and requires egregious conduct" and "is an extremely high standard to meet". *Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2573 (2022) (citations omitted). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id*. at 226 (quoting *Porter*, 659 F.3d at 446).

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless choose[s] to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat superior* liability.

*Porter*, 659 F.3d at 447 (internal citations and quotation marks omitted and modifications cleaned up). Again, "overdetention" is the effect – the alleged constitutional violation. Thus, the Plaintiff must allege and ultimately prove a pattern of <u>similar overdetentions</u>, which identifies a <u>particular</u>

<u>deficiency</u> in DPSC policy to satisfy the foregoing required, mandatory element of the deliberate indifference analysis.

Plaintiff does not identify any other instances where another DPSC offender was allegedly overdetained due to intentional disregard for a court's release order.  In *Hicks v. LeBlanc*, 832 Fed.Appx. 836 (5th Cir. 2020), the offender alleged an employee of DPSC intentionally disregarded the sentencing court's specific order to provide the offender with credit for all time he had ever served in prison in Louisiana and Arkansas.  The trial court denied qualified immunity to Secretary LeBlanc.  The Fifth Circuit reversed and rendered judgment in favor of the Secretary because the Plaintiff had failed to plead a pattern of similar acts of intentional disregard for court orders.  *Id*.  *Hicks*, it must be noted, was dismissed on a Rule 12 motion and judgment was rendered without leave to amend.  It must also be noted that Hicks and Buchicchio share an attorney, and the claims against LeBlanc that were dismissed in *Hicks* are virtually identical to the claims against LeBlanc herein.  *Hicks*, therefore, is highly persuasive and should be considered when disposing of Plaintiff's claim that LeBlanc is liable for an alleged intentional disregard of Judge Doggett's order at the March 3, 2021 hearing.

Plaintiff also fails to plead a pattern of similar overdetentions resulting from delays in calculation of a sentence.  While Plaintiff offers two examples of reasons why a sentence calculation may be delayed (delayed receipt of paperwork and internal processing delays), Plaintiff does <u>not</u> plead any facts explaining what happened here.  Thus, Plaintiff fails to meet his burden of pleading either of those examples is <u>similar to the Plaintiff's overdetention</u>.

Plaintiff did not satisfy his burden of identifying a pattern of similar constitutional violations.  Again, the pattern of similar violations is used to put a supervisory official on notice of a particular deficiency in the policies or practices.  See e.g. *Crittindon v. LeBlanc*, 37 F.4th 177,

187 (5th Cir. 2022) (*petition for rehearing en banc pending*).  While Secretary LeBlanc disagrees with the holding of *Crittindon*, the majority of the panel rightly found that the large number of alleged "overdetentions" was not proof of a pattern of similar constitutional violations for purposes of the deliberate indifference analysis.  *Id.*  Instead, the majority of the panel, at the outset of its analysis, examined the alleged <u>causes</u> of the overdetentions and identified a particular alleged deficiency in DPSC policy: the delay of "approximately 31 days for documents to be transmitted from the Clerk of Court to the local jail to DPSC's Pre-Classification Department."  *Id.*  Again, the Plaintiff does not allege any facts explaining the cause of the delay in this case so, the *Crittindon* ruling merely an example of how particularly the Plaintiff must identify a challenged deficiency in Department policy and its causal relationship to the facts of the Plaintiff's case.

Plaintiff's §1983 claims must be dismissed because he failed to identify a pattern of similar overdetentions sufficient to put the Secretary on actual notice that a <u>particular deficiency</u> in DPSC policy would lead to convicted prisoners being held past their prison terms <u>and that particular deficiency caused Nicholas Buchicchio's overdetention</u>.  Thus, the Plaintiff failed to meet his burden of pleading the Secretary acted with deliberate indifference to a <u>known or obvious consequence</u> of a choice to retain the <u>particular deficient policy about which he knew</u>.  The first prong of the qualified immunity analysis must be resolved in favor of Secretary LeBlanc.

### c.  The conduct of Secretary LeBlanc was not objectively unreasonable in light of clearly established law.

The deliberate indifference standard, which determines whether the Fourteenth Amendment was violated, is a different legal standard than objective reasonableness for purposes of qualified immunity.  See *Thompson v. Upshur County, TX*, 245 F.3d 447, 458 n. 8 (citations omitted).  Thus, a finding of deliberate indifference does <u>not</u> end the qualified immunity inquiry

and this Court must still evaluate the Secretary's conduct in light of the law clearly established at the time of his actions.

However, Plaintiff fails to articulate a particular deficiency in DPSC policy or practice that allegedly caused Plaintiff's alleged overdetention, and he has not pleaded conduct of Secretary LeBlanc that was objectively unreasonable in light of clearly established law.

Finally, for purposes of evaluating whether the state of the law in 2021 clearly put Secretary LeBlanc (or others in a similar position) on notice that his "policies" violated the Constitution, this Honorable Court should note that the Fifth Circuit has, in three separate *per curiam* decisions, considered the qualified immunity of Secretary LeBlanc in "overdetention" lawsuits brought by the same attorney representing the Plaintiff herein. The Fifth Circuit rendered judgment in favor of Secretary LeBlanc in two of those cases (*Grant v. LeBlanc*, No. 21-30230, 2022 WL 301546, at *5 (5th Cir. Feb. 1, 2022); *Hicks v. LeBlanc*, 832 F. App'x 836, 841 (5th Cir. 2020));[13] and vacated the denial of qualified immunity and remanded for reconsideration of the defense in the third (*Traweek v. LeBlanc*, No. 21-30096, 2022 WL 2315444 (5th Cir. June 28, 2022)). In a fourth case, which was not brought by Buchicchio's lawyers, a divided panel found that genuine issues of material fact precluded entry of summary judgment in favor of LeBlanc. *Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022).

       2.  <u>Secretary LeBlanc is entitled to dismissal of the state law claim.</u>

Plaintiff also sues Secretary LeBlanc under Louisiana law for negligence and false imprisonment. As with the other "counts" in his shotgun complaint, the negligence and false imprisonment suits are based on the same factual allegations as all of the other counts, and the negligence count (Count 4), incorporates the false imprisonment count (Count 3) "as if copied

---

[13] In both *Hicks* and *Grant*, the Fifth Circuit found the plaintiffs did not allege (*Hicks*) or prove (*Grant*) that LeBlanc violated plaintiffs' constitutional rights.

herein *in extenso*." Doc. 21, ¶132. Furthermore, as with the §1983 "counts" that are actually a single cause of action, plaintiff's negligence and false imprisonment "counts" are actually a single cause of action. See e.g. *Hayes v. Kelly*, 625 So. 2d 628, 632 (La. App. 3d Cir. 1993), *writ denied*, 633 So. 2d 171 (La. 1994), *and writ denied,* 633 So. 2d 580 (La. 1994) (citing *Roberts v. Benoit*, 605 So.2d 1032 (La.1991); *Wilson v. Department of Public Safety & Corrections*, 576 So.2d 490 (La.1991)). See also *Griffin v. City of Lafayette*, 166 F.3d 340 (5th Cir. 1998) (citing *Carlton v. Foti*, 660 So.2d 76, 78 (La. App. 4th Cir.1995) (jailer cannot be held liable for false imprisonment absent showing of negligence).

### a. Plaintiff's state law claims may be dismissed.

Plaintiff alleges Secretary LeBlanc is liable for false imprisonment because Plaintiff's detention in DPSC custody was "unlawful." Doc. 21, ¶130. Specifically, Plaintiff alleges his detention was unlawful because Judge Doggett had entered an order "that entitled Mr. Buchicchio to immediate release on January 17, 2020." *Id*. (citations omitted). The claim that Plaintiff was overdetained as of the date of his original sentencing is <u>not</u> part of this lawsuit. Doc. 21, ¶22. Thus, the false imprisonment count does not state a claim that is being brought in this suit and it should be dismissed.

The negligence count, Count Four, is purely conclusory and fails to state a claim. Plaintiff alleges "LeBlanc['s] […] conduct of overdetention described above caused Mr. Buchicchio harm as described above and below." Doc. 21, ¶132. As explained above, "overdetention" is the effect - the result of allegedly wrongful conduct - it is not the conduct itself.

Plaintiff then alleges the duty to "avoid overdetention" was breached by LeBlanc due to "the failure to timely release Mr. Buchicchio even after the error was repeatedly brought to DOC and Juge's attention by Mr. Buchicchio, Judge Doggett and finally to DOC's attention by the Ms. Ramaswamy." *Id*. at ¶133-134. LeBlanc's alleged personal liability is not pleaded. Plaintiff does

not allege that LeBlanc, personally, had been notified of an alleged error.  Again, DPSC is not a party to this action.  Because Plaintiff did not plead a negligence claim against Secretary LeBlanc, personally, that claim should be dismissed with prejudice.

## III.    Conclusion

Considering the foregoing, Plaintiff's shotgun complaint should be dismissed.   The claims for equitable relief should be dismissed without prejudice for lack of subject matter jurisdiction. The claims for monetary relief should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:    *s/Phyllis E. Glazer*                          
**PHYLLIS E. GLAZER (La. #29878)**
**ASSISTANT ATTORNEY GENERAL**

**Louisiana Department of Justice**
**Litigation Division**
1885 North Third Street, 3rd Floor
Post Office Box 94005 (70804-9005)
Baton Rouge, Louisiana 70802
Telephone:    225-326-6300
Facsimile:    225-326-6495
E-mail:        GlazerP@ag.louisiana.gov