# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**NICHOLAS BUCHICCHIO**

                                **CIVIL ACTION**

**VERSUS**

                                **NO. 22-147-BAJ-EWD**

**JAMES LEBLANC, ET AL.**

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
## FILED BY DEFENDANT LEBLANC

**NOW INTO COURT**, through undersigned counsel, comes plaintiff Nicholas Buchicchio, who respectfully submits this opposition to the motion to dismiss (Doc. 28) filed by Defendant James LeBlanc. Defendant LeBlanc's motion asks the court to overlook Mr. Buchicchio's detailed factual allegations showing that LeBlanc's department unlawfully incarcerated Mr. Buchicchio past his release date, violating Mr. Buchicchio's rights under Louisiana and federal law. Specifically, Defendant LeBlanc asks the court to find that he is entitled to qualified immunity despite Mr. Buchicchio's particularized allegations of LeBlanc's awareness of and involvement in his department's pervasive and widespread practice of over-detaining inmates.

The Fifth Circuit recently held that Defendant LeBlanc is not entitled to qualified immunity for an overdetention claim because as of 2016 he was aware of a "pattern of delays" causing the overdetention of inmates, made a "conscious decision not to address it," and subsequent delays deprived prisoners of their "clearly established right to timely release from prison." *Crittindon v. LeBlanc*, 37 F.4th 177, 187-88 (5th Cir. 2022). Similarly, courts in this District have repeatedly denied qualified immunity to Secretary LeBlanc at the pleading stage on factual allegations similar to the ones in Mr. Buchicchio's complaint. *E.g.*, *Taylor v. LeBlanc*, 21-cv-00072-BAJ-RLB, Doc. 10 (M.D. La., Sept. 13, 2021); *McNeal v. DPS&C,* 18-cv-00736-JWD-EWD, Doc. 110 (M.D. La.,

April 18, 2022).  Accordingly, LeBlanc's Motion should be denied and this case should proceed to discovery.

## SUMMARY OF RELEVANT ALLEGATIONS

Nicholas Buchicchio has been unlawfully detained by Defendant LeBlanc beyond his release date on at least three occasions. Doc. 21, ¶¶ 5, 7-9, 17-21.  This action arises out of Mr. Buchicchio's most recent unlawful over-detention, wherein Judge Mary Ann Doggett of Louisiana's 9th Judicial District Court ordered Mr. Buchicchio's immediate release on March 3, 2021, but Mr. Buchicchio was detained until May 25, 2021.  *Id.* at ¶ 22.  As Mr. Buchicchio's petition makes clear, Defendant LeBlanc's record of overdetaining offenders beyond their lawful release date is a disturbing and pervasive pattern (*Id.* at ¶¶ 81-106), one that even DOC's own counsel, Attorney General Landry, admits is rooted in a "layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison." Doc. 21, ¶ 82 (emphasis added).  Mr. Buchicchio's complaint offers his own history of overdetention at the hands of Defendant LeBlanc to show the prevalence of this issue.

### I.    Mr. Buchicchio's First Overdetention.

In March 2017, Mr. Buchicchio, a non-violent offender, was arrested in Rapides Parish, Louisiana for violating probation issued by a Florida court.  Doc. 21, ¶¶ 33-34.  Mr. Buchicchio pled guilty to the probation violation, his probation was revoked, and he was remanded to Florida's Department of Corrections to serve his sentence.  *Id.* at ¶ 37.  Mr. Buchicchio completed his sentence in Florida and was sent back to Rapides Parish for proceedings related to the underlying offense that caused his probation to be revoked.  *Id.* at ¶ 38.

On May 6, 2019, Mr. Buchicchio arrived in Rapides Parish, and was incarcerated in the parish jail. Doc. 21, ¶ 37. On January 17, 2020, Mr. Buchicchio pled guilty to the theft offense and was sentenced to seven years with credit for all time served. *Id.* at ¶ 38. Specifically, the presiding judge, Judge Mary Doggett of the 9th Judicial District Court for the Parish of Rapides made it clear that Mr. Buchicchio was to receive credit from March 13, 2017 and acknowledged that Mr. Buchicchio was entitled to be released under current law. *Id.* at ¶¶ 39-41. Despite his entitlement to immediate release, Mr. Buchicchio continued to be imprisoned at the Rapides Parish Prison until he was released on February 11, 2020. *Id.* at ¶ 44.

**II.    Mr. Buchicchio's Second Overdetention.**

After his release, Mr. Buchicchio moved to Florida with his fiancée and applied for jobs. Doc. 21 at ¶ 45. While Mr. Buchicchio was rebuilding his life, and unbeknownst to Mr. Buchicchio, the Louisiana Department of Public Safety and Corrections ("DOC") was reversing course on Mr. Buchicchio's release. *Id.* at ¶ 55. Sometime after Mr. Buchicchio's release, DOC wrongly determined that Mr. Buchicchio was required to serve additional time in prison despite his release, and issued a warrant for his arrest. *Id.* Mr. Buchicchio's was re-arrested on June 20, 2020 on his way home from a job interview. *Id.* at ¶¶ 48-55. After his arrest, Mr. Buchicchio remained in custody and was transferred by bus from Miami, Florida to DOC's Elayn Hunt Correctional Center in Louisiana. *Id.* at ¶ 56. Because of the spread of Covid-19 during this time, Mr. Buchicchio was confined to a two-man cell and on "lockdown" for 23 hours per day. *Id.* at ¶ 57.

Mr. Buchicchio immediately pleaded with DOC officials to release him as he had already served his sentence in its entirety. Doc. 21 at ¶ 58. He filed a grievance to prompt DOC officials to review his case, specifically pointing officials to Judge Doggett's January 17, 2020 order

crediting him with all time served. *Id.* at ¶ 59. DOC responded to Mr. Buchicchio's grievance by denying him relief and refusing to take into consideration Judge Doggett's order. *Id.* at ¶ 60.

After his grievance was denied, Mr. Buchicchio filed a *pro se* motion in Judge Doggett's court in hopes that he could obtain an order reiterating Judge Doggett's prior ruling and forcing DOC to finally release him. Doc. 21 at ¶¶ 61-62. On September 21, 2020, the court received Mr. Buchicchio's Motion and set it for hearing. *Id.* at ¶ 62. Over the next five months, DOC refused on at least three occasions to take Mr. Buchicchio to the hearing set by the court on his motion, or to otherwise give Mr. Buchicchio virtual access to these hearings. *Id.* at ¶¶ 63-65. Thus, the court was forced to reset Mr. Buchicchio's hearing each time.

### III.   Mr. Buchicchio's Third Overdetention – the Subject of this Lawsuit.

Finally, on March 3, 2021, DOC officials finally permitted Mr. Buchicchio to attend the court's scheduled hearing on his motion. Doc. 21 at ¶ 67. At the March 3rd hearing, Judge Doggett unambiguously ordered Mr. Buchicchio's immediate release. *Id.* at ¶ 69. At that time, Mr. Buchicchio was housed at the DOC's West Baton Rouge Work Release Center, which is headed by Defendant Steven Juge. *Id.* at ¶ 63. Mr. Juge was present with Mr. Buchicchio at the March 3rd hearing and told Mr. Buchicchio that he understood that the judge's ruling entitled Mr. Buchicchio to be immediately released. *Id.* at ¶¶ 71-72.

Despite the clarity of the judge's March 3rd order, and Defendant Juge's acknowledgment that Mr. Buchicchio was entitled to immediate release, DOC continued to detain Mr. Buchicchio. Doc. 21 at ¶ 73. After the March 3rd hearing, Mr. Buchicchio asked Defendant Juge on several occasions why he was still being detained. *Id.* at ¶ 74. Defendant Juge responded that the issue was "out of [his] hands," indicating that DOC administration had not yet authorized Juge to release Mr. Buchicchio. *Id.* at ¶ 76. In May 2021, Mr. Buchicchio, who was still incarcerated, contacted

the non-profit Promise of Justice Initiative, who wrote to DOC's counsel requesting that DOC immediately recalculate Mr. Buchicchio's time and release him as soon as possible. *Id.* at ¶¶ 77-80. Four days after this correspondence, Mr. Buchicchio was finally released from DOC custody on May 25, 2021. *Id.* at ¶ 80.

## LAW & ARGUMENT

Mr. Buchicchio's detailed petition states cognizable claims for relief against Defendant LeBlanc – claims for which LeBlanc is not entitled to qualified immunity. In evaluating a motion to dismiss a civil rights suit at the pleading stage, courts in this circuit require that "a plaintiff's pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief," and "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint asserts a "facially plausible" claim if it "alleges facts that, accepted as true, allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See* 556 U.S. at 678.

In evaluating the complaint, the court "must accept the facts in the complaint as true," but is not required to "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold*, 979 F.3d at 266 (citing *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)). Additionally, the court must "draw[ ] all reasonable inferences in the nonmoving party's favor." *Franklin v. Regions Bank*, 976 F.3d 443, 447 (5th Cir. 2020). "A complaint may proceed even if recovery is very remote and unlikely, so long as the alleged facts raise a right to relief above the speculative level." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018).

I.      **Mr. Buchicchio's Complaint States Valid Claims for Relief Against Defendant LeBlanc.**

> a. *Defendant LeBlanc's Qualified Immunity Argument is Meritless Post-*Crittindon*.*

Defendant LeBlanc's motion argues that he is entitled to qualified immunity even though the Fifth Circuit in *Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022) rejected the same arguments he makes here.  In *Crittindon*, the Fifth Circuit upheld this court's denial of qualified immunity to LeBlanc in *Crittindon v. Gusman*, 17-cv-00512-SDD-EWD, Doc. 168 (M.D. La., Apr. 13, 2020), a case where plaintiffs allege that LeBlanc, though not directly involved in overdetaining them, oversaw DOC officials' now decade-long failure to correct the well-known systemic delays in DOC's time computation practice.   In *Crittindon*, the Fifth Circuit denied LeBlanc's qualified immunity defense upon the same arguments he makes here, determining that a reasonable factfinder could find that (1) LeBlanc's inaction on DOC's overdetention problem, despite his knowledge of the problem, "amounted to a disregard of an obvious risk," and (2) that LeBlanc's failure to act to correct the months-long delays in the time computation system was objectively unreasonable in light of inmates "clearly established right to timely release from prison."  *Id.* at 187-88.   In fact, the court held that as of the 2016 and 2017 overdetentions at issue in *Crittindon* "it is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process." *Id.* at 188 (citing *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980)).

Notably, the Fifth Circuit's decision in *Crittindon* did not represent a shift in the circuit's qualified immunity law. Instead, the Fifth Circuit repeatedly recognized prior to Crittindon that "[t]he Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired." *Hicks v. LeBlanc*, 832 F. App'x

836, 840 (5th Cir. 2020) (unpublished); *see also Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) ("[A] jailer has a duty to ensure that inmates are timely released from prison."). Moreover, the Fifth Circuit has also held that prison officials cannot escape liability "by arguing that, while they allegedly were aware of and consciously disregarded a substantial risk of serious harm to a discrete class of vulnerable inmates, they were not aware that the particular inmate involved in the case belonged to that class." *Hinojosa v. Livingston*, 807 F. 3d 657, 667 (5th Cir.), *citing Farmer*, 511 U.S. at 843. Thus, Secretary LeBlanc can be held liable for a pattern of "incompetent over-detention, such as the failure to process a prisoner's release or immediately compute an inmate's sentence after being sentenced to time served." *Hicks, supra.*

The Fifth Circuit also reaffirmed this year that jailors cannot rely on ignorance of court orders to excuse them from liability. In *Harris v. Clay Cnty.*, 21-60456 (5th Cir. 2022), the court rejected an ignorance-of-court orders defense:

> As we said long ago of another sheriff's defense to a prolonged detention claim— he argued that his ignorance of a court's ordering the defendant's release excused him from liability—if that were the law then "nine months could easily be nine years, and those nine years, ninety-nine years, and still as a matter of law no redress would follow."

*Id*. at *12, *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1968).

Pursuant to these Fifth Circuit decisions, trial courts have repeatedly denied qualified immunity to Secretary LeBlanc where the plaintiff's facts fit within the pattern of overdetention. For example, in *Taylor v. LeBlanc,* 21-cv-00072-BAJ-RLB, Doc. 10 at *13 (M.D. La., Sept. 13, 2021), this Court assessed factual allegations similar to the ones here and concluded:

> Plaintiff alleges that LeBlanc's failure to adopt policies to correct DPSC's unlawful detention problem constitutes deliberate indifference to Plaintiff's constitutional

right to timely release. This allegation, and the evidence Plaintiff has identified to support it, is sufficient to overcome the qualified immunity defense at the 12(b)(6) stage of these proceedings.

*See also Crittindon v. Gusman*, 17-cv-00512-SDD-EWD, <u>Doc. 168</u> (M.D. La., Apr. 13, 2020) (denying qualified immunity to Secretary LeBlanc in overdetention case involving at least fifty-seven inmates).

LeBlanc's motion in this case merely attempts to reheat the arguments that the Fifth Circuit discarded in *Crittindon* and *Harris*.  Mr. Buchicchio alleges here, as the plaintiffs in *Crittindon*, that LeBlanc knew about the delays in the time computation system and deliberately ignored them, leading DOC to delay his release by nearly three months. Moreover, Mr. Buchicchio's case presents a more significant *per se* violation of due process rights than the Fifth Circuit found in *Crittindon*.  Mr. Buchicchio alleges that LeBlanc's failure to correct the time computation delays caused him to be overdetained by 84 days in 2021, nearly three times as long as the 30 days that the Court in *Crittindon* held to be a "per se deprivation of due process" as of 2016.  <u>37 F.4th at 188</u>.  Notably, LeBlanc's motion does not even mention *Harris,* even though it is the most recent Fifth Circuit decision about the right to liberty.[1] Accordingly, LeBlanc's qualified immunity argument is without merit.

### i. LeBlanc's argument that he did not violate Buchicchio's constitutional rights ignores the allegations at issue.

LeBlanc's motion argues that he did not violate Mr. Buchicchio's constitutional rights, ignoring controlling Fifth Circuit law and the allegations at issue in this case.  Specifically, LeBlanc's motion overlooks Buchicchio's allegations that LeBlanc failed for almost a decade to supervise and train his department to timely calculate release dates, and this decade-long failure

---

[1]        Like *Crittindon,* the Court in *Harris* determined what was clearly established before Mr. Buchicchio's overdetention. *Harris,* <u>40 F.4th at 275</u> (describing the "clear as day" illegality of Harris' 2010 detention).

caused DOC to fail to timely calculate Mr. Buchicchio's release date until almost three months after he was entitled to release. Instead of acknowledging these facts, LeBlanc's motion imagines that Buchicchio's complaint does not link the voluminous allegations of *LeBlanc's* deliberate indifference to the failure of *LeBlanc's department* in this case. This characterization does not reflect the allegations at issue in Buchicchio's complaint.

First, despite LeBlanc's assertion that "[n]o facts with regard to training or supervision are pleaded," Mr. Buchicchio's complaint pleads volumes of such facts. LeBlanc's argument misses the forest for the trees: paragraphs 83 through 105 of Mr. Buchicchio's complaint detail LeBlanc's failures to train and supervise, including quotes from LeBlanc himself recognizing that he has failed to change DOC's time computation directives, even though its current delays are "ridiculous," "absurd," and "something we need to address…," (Doc. 21 at ¶ 95). Despite knowledge of this pervasive problem, and his acknowledgment that it must change, LeBlanc admits that he has failed to take any sort of employment action against any DOC employee for "incorrectly comput[ing] sentences or release dates" to date. *Id.* at ¶ 102. Further, LeBlanc has admitted that his failure to put "a system in place to" release those entitled to expeditiously compute release dates is "part of the problem." *Id.* at ¶ 96. These allegations in Mr. Buchicchio's complaint are even more than Mr. Buchicchio is required to offer at this stage in the proceedings to assert a failure to train or supervise claim. These allegations are documented examples of LeBlanc's failure as a supervisor and department head to keep his department from actively violating inmates' known rights. LeBlanc's conduct is especially egregious where state offices, including his own agency, have repeatedly notified him of DOC's costly and illegal time computation delays. *Id.* at ¶¶ 86-96, 100.

Second, LeBlanc feigns confusion about "what 'widespread practices'" Mr. Buchicchio alleges are the *de facto* policies of DOC that have caused Mr. Buchicchio's overdetention. Doc. 28-1, pp. 15-16. LeBlanc presumes that two such practices could be that DOC "did not timely recalculate Plaintiff's sentence after the March 3, 2021 hearing," and/or that DOC "intentionally did not follow" a court order. *Id.* at p. 16. As to the first practice, LeBlanc argues that the complaint does not allege how LeBlanc caused the delay, and as to the second, LeBlanc argues that Buchicchio has not alleged a DOC practice of ignoring court orders.

Again, LeBlanc's argument deliberately overlooks Mr. Buchicchio's voluminous allegations that LeBlanc has been aware that his department has a *de facto* policy that it does not immediately compute an offender's release date following a court's order, and that LeBlanc has knowingly accepted this practice and allowed it to persist for a decade without any demonstrable intention to stop it. Mr. Buchicchio alleges that this *de facto* policy has predictably resulted in thousands of inmates being overdetained where a court order entitles them to immediate release. Accordingly, when a court order entitled Mr. Buchicchio to immediate release, LeBlanc's de facto policy of lengthy delay deprived him of his rights. Mr. Buchicchio clearly asserts that LeBlanc's conduct violated his constitutional rights.

### ii. LeBlanc's deliberate indifference argument is foreclosed by *Crittindon*.

As above, LeBlanc attempts to ignore *Crittindon* and argues that Mr. Buchicchio's complaint must identify other DOC overdetentions that are granularly identical to DOC's three-month delay in this case. LeBlanc similarly argued in *Crittindon* that the plaintiffs' specific flavor of overdetention – "overdetentions caused by delay from the local jails" – could not support a deliberate indifference finding because there was no evidence that LeBlanc was notified of this particular problem. 37 F.4th at 187. LeBlanc incorrectly states that "the majority of the panel"

in *Crittindon* "rightly found that the large number of alleged 'overdetentions' was not proof of a pattern of similar constitutional violations for purposes of the deliberate indifference analysis." Doc. 28-1 at p. 18-19 (citing 37 F. 4th at 187).

Simply put, LeBlanc's motion appears to significantly misread *Crittindon*. LeBlanc's motion appears to cite a passage of LeBlanc's own argument in *Crittindon*, which the Fifth Circuit recounts in its opinion, before rejecting that argument and concluding in the same paragraph that such an argument "misses the point." 37 F. 4th at 187. Instead, the court determines that "Defendants cannot avoid the evidence that the [2012 Lean Six Sigma] study exposed unlawful detention of prisoners..." and that "a reasonable factfinder could conclude that Defendants' awareness of this pattern of delays and their conscious decision not to address it rises to the level of deliberate indifference." 37 F. 4th at 187-88. In the other words, the Fifth Circuit rejected the reasoning LeBlanc offers here, finding that the DOC Lean Six Sigma study alone exposed a broader problem of DOC's "unlawful detentions of prisoners" such that LeBlanc and DOC administrators were put on notice and required to correct it.

Here, this Court should also reject LeBlanc's efforts to unduly narrow the practice that Mr. Buchicchio challenges. Buchicchio alleges that LeBlanc ignored the time computation delays in his department despite repeated warnings that a failure to correct the practice left those entitled to immediate release overdetained months beyond their lawful release dates. As was found in *Crittindon*, allegations of such ignorance state a claim for relief and LeBlanc is not entitled to qualified immunity.

### iii.  LeBlanc's conduct is objectively unreasonable under clearly established law.

LeBlanc's argument concerning the objective reasonableness of his conduct blends the errors common to his other arguments: (1) it overlooks Mr. Buchicchio's allegations, and (2) it

ignores that the Fifth Circuit rejected this argument in *Crittindon*.   Relying on non-precedential, unpublished decisions, LeBlanc argues that he could not have been on notice that DOC's practice of delaying release date computations by months would lead to constitutional violations.   This argument is meritless because (1) LeBlanc was unquestionably on notice that DOC's time computation practices were actively violating hundreds of inmates' rights, and (2) it is beyond question that these rights were clearly established at the time of Mr. Buchicchio's overdetention in 2021.

First and notably, LeBlanc again claims that Mr. Buchicchio's complaint fails to allege a matter that it in fact alleges in straightforward, plain language.   Here, LeBlanc argues that Mr. Buchicchio fails to allege "conduct" of LeBlanc that "was objectively unreasonable in light of clearly established law."   On the contrary, Mr. Buchicchio alleges many instances of LeBlanc's conduct that were objectively unreasonable, particularly citing instances where LeBlanc was informed of the pervasiveness and gravity of his department's failure to timely compute release dates, and alleging that none of these instances spurred LeBlanc to act to fix the problem:

1. the Lean Six Sigma survey in 2012 clearly identified the problem and estimated that the state could save $3.7 million per year by fixing it (Doc. 21 at ¶¶ 87-89);

2. a 2018 DOC investigation showed that "200 cases per month" were detained but eligible for immediate release, (*Id.* at ¶ 92);

3. LeBlanc himself recognized in 2019 that the problem was "ridiculous," "absurd" and "something we need to do something to address…" (*Id.* at ¶ 95);

4. a district court judge expressed concerns about DOC's failures to LeBlanc by email in 2019, to which LeBlanc merely responded that the article was "poorly written" (*Id.* at ¶ 96),

5. DOC's legal department warned LeBlanc in 2019 of potential for "liability and litigation" due to the departments failure to timely release inmates (*Id.* at ¶ 100), and

6. DOC's legal department again warned LeBlanc in 2019 that 231 people in its custody had been overdetained due to the department's failure to timely compute release dates

after court orders, resulting in "an average of 44 days to be released after a judge
ordered them free" (*Id.* at ¶ 105).

Mr. Buchicchio's allegation that LeBlanc failed to take action to respond to any of the warnings
above clearly pleads that LeBlanc engaged in objectively unreasonable conduct.

Second, Mr. Buchicchio's right to timely release was clearly established when his
overdetention occurred in 2021. The Fifth Circuit found in *Crittindon* that LeBlanc's inaction
could be objectively unreasonable in light of clearly established law as of the 2016 and 2017
overdetentions at issue in that case. Specifically, *Crittindon* held that "it is without question that
holding without legal notice a prisoner for a month beyond the expiration of his sentence
constitutes a denial of due process." 37 F.4th at 188 (citing *Douthit v. Jones*, 619 F.2d 527, 532
(5th Cir. 1980)). In fact, the court found that overdetaining a prisoner by "thirty days is a per se
deprivation of due process." *Id.* As of 2016 and 2017, LeBlanc had "fair warning" that his "failure
to address" the delays in DOC's pre-classification system would "deny prisoners… their
immediate or near-immediate release upon conviction." *Id.* Thus, "a reasonable jury may find
that Defendants' inaction was objectively unreasonable in light of this clearly established law,"
and LeBlanc is not entitled to qualified immunity. *Id.* Given that Mr. Buchicchio alleges he was
overdetained in 2021, up to five years after the plaintiffs in *Crittindon*, Mr. Buchicchio's right to
timely release was clearly established.

### iv. LeBlanc should be denied qualified immunity even if the Court weighs the unpublished decisions in *Grant* and *Hicks*.

LeBlanc argues that the Fifth Circuit's published decision in *Crittindon* should be
overlooked in favor of two unpublished decisions, *Hicks v. LeBlanc*, 832 F. App'x 836 (5th Cir.
2020) and *Grant v. LeBlanc*, No. 21-30230, 2022 WL 301546 (5th Cir. Feb. 1, 2022), where the
court was more receptive to LeBlanc's qualified immunity arguments. LeBlanc cites a third case,

*Traweek v. LeBlanc*, No. 21-30096, 2022 WL 2315444 (5th Cir. June 28, 2022), where the Fifth Circuit did not reach LeBlanc's qualified immunity arguments because it remanded to permit the district court, which denied qualified immunity to LeBlanc, to specify its factual findings and consider the Fifth Circuit's analysis in *Crittindon*.  LeBlanc argues that the court should apply the unpublished decisions in *Grant* and *Hicks* to this case instead of the published decision in *Crittindon* in part because Grant and Hicks were represented by William Most, undersigned co-counsel for Mr. Buchicchio, whereas Crittindon was represented by a different lawyer.  Doc. 28-1, p. 20.  LeBlanc offers no authority for the proposition that the identity of plaintiff's counsel is relevant in any way to the court's qualified immunity analysis.

LeBlanc's argument that *Grant*, *Hicks* and *Traweek*, should be applied to this case with more weight than *Crittindon* is illogical.  First, *Traweek* did not reach or even comment upon the issue of whether LeBlanc's conduct was reasonable in light of clearly established law.  Second, *Grant* and *Hicks* are non-precedential cases that concerned periods of overdetention that occurred in 2016 and 2018 respectively. During the subsequent years between the overdetention at issue in *Grant* and *Hicks* and the 2021 overdetention of Mr. Buchicchio at issue here, the pattern of overdetention presided over by Secretary LeBlanc became far clearer.

For example, a 2017 internal investigation by the DOC found that the DOC "had an average of 200 cases per month considered an 'immediate. release' due to these deficiencies." Doc. 21 at ¶ 92.  In 2018, DOC staffers created an Excel spreadsheet titled "Avg Days Overdue" which revealed an average of 38.6 "days overdue" for overdetained persons. *Id*. at ¶ 94. In 2018, the DOC's website noted that if "a person has recently been sentenced to DOC custody, it can take up to 12 weeks to calculate a date." *Id*. at ¶ 95.  In 2019, Secretary LeBlanc testified that those twelve weeks were "absurd." *Id*.

Also in 2019, general counsel for the Department of Corrections reported that "231 people across the state were affected [by overdetention]. Those people waited an average 44 days to be released after a judge ordered them free." *Id*. at ¶ 105.  And in 2019, Secretary LeBlanc received and responded to correspondence from a judge about the "failure to timely release inmates." *Id*. at ¶ 96. Later in 2019, Secretary LeBlanc approved a strategic plan that contained no goals about addressing overdetention, and at least twice he has promised, under oath, to amend the strategic plan to add goals about mitigating overdetention. *Id*. at ¶¶ 97-98. But he has not. *Id*. at ¶ 99.

Also during those five years, the pattern of overdetention was brought to Secretary LeBlanc's attention by a series of lawsuits. *See Thomas*, 17-cv-01595 (M.D. La.), *Crittindon*, 17-cv-00512 (M.D. La.), *Copelin*, 17-cv-00602 (M.D. La.), *Parker*, 18-cv-01030 (M.D. La.), *Babineaux*, 18-cv-00233 (W.D. La.), *Frederick*, 18-cv-00682 (M.D. La.), *McNeal*, 18-cv-00736 (M.D. La.), *Traweek*, 19-cv-01384 (E.D. La.), *Hicks*, 19-108 (M.D. La.), *Humphrey*, 20-cv-00233 (M.D. La.), *Giroir*, 21-cv-00108 (M.D. La.), *Taylor*, 21-cv-00072 (M.D. La.), etc.

And then a few months before Mr. Buchicchio's overdetention, the United States Department of Justice announced an investigation into the pattern of overdetention. The investigation was a joint operation of the U.S. Attorney's Offices for the Eastern, Middle, and Western Districts of Louisiana, and the Civil Rights Division's Special Litigation Section.[2]

Earlier this year, a subset of these allegations led Judge deGravelles to deny qualified immunity to Secretary LeBlanc. He wrote:

> construing these allegations in a light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court finds that a reasonable juror could conclude that LeBlanc implemented defective policies and training that lead to the over-detention of Plaintiff and others in violation of their due process rights. A reasonable juror could also find from the facts alleged in the Amended Complaint

---

[2]     U.S. Department of Justice, *Justice Department Announces Civil Investigation into Louisiana's Prison Release Practices* (Dec. 3, 2020), available online at https://www.justice.gov/usao-mdla/pr/justice-department-announces-civil-investigation-louisianas-prison-release-practices

that LeBlanc was deliberately indifferent based on the longstanding pattern of sufficiently similar incidents described in the Amended Complaint.

*McNeal v. DPS&C,* 18-cv-00736-JWD-EWD, <u>Doc. 110</u> (M.D. La., April 18, 2022).

The Court in *McNeal* assessed the Fifth Circuit's unpublished opinion in *Grant*, and found that it was factually distinguishable in part because of the timing – Grant's overdetention occurred in 2016, but McNeal's occurred in 2017, after the Legislative Auditor report and DOC internal investigation. Mr. Buchicchio's claim is far stronger because it occurred in 2021, with all the compounding evidence of overdetention that was revealed in those years. Indeed, Buchicchio was overdetained after the Fifth Circuit's 2020 decision in *Hicks* that LeBlanc "could be held liable for incompetent over-detention, such as the failure to process a prisoner's release or immediately compute an inmate's sentence after being sentenced to time served." *Hicks*, *supra.*

The Court also found *Grant* distinguishable because in *McNeal* the plaintiff "objects to the widespread pattern of continuous errors made by DPSC and its employees; consequently, the 2012 Sigma Six examination of DPSC's internal-release procedures are significantly more pertinent to the Court's deliberate indifference analysis." So too here – Mr. Buchicchio presents overwhelming allegations of a pattern of overdetention that led to his personal, repeated overdetention, culminating in the period of overdetention he sues for now. The core problem that led to Mr. Buchcicchio's overdetention is that Secretary LeBlanc has known for a decade that thousands of inmates *per year* are held past their release date in Louisiana, and he has failed to fix it. That is exactly the problem that led to Mr. Buchicchio's 2021 overdetention.

Accordingly, even if the Court weighs the Fifth Circuit's decisions in *Grant*, *Hicks* and *Traweek*, the motion should be denied.

> **b. Mr. Buchicchio's Complaint States a Claim Against Defendant Leblanc for State Law Torts.**

LeBlanc's Motion contains two sparse arguments that Mr. Buchicchio's false imprisonment claim and negligence claim should be dismissed.  Leblanc argues that Mr. Buchicchio's false imprisonment claim fails because he alleges that he was entitled to release starting on January 17, 2020, not merely as of March 3, 2021, and that his negligence claim should be dismissed because it is "conclusory."  Doc. 28-1 at pp. 21-22.

Again, LeBlanc's Motion ignores Mr. Buchicchio factual allegations that support each claim. First, the false imprisonment claim clearly applies to Mr. Buchicchio's wrongful incarceration from March 3, 2021 to May 25, 2021, as specifically stated in the complaint. *See* Doc. 21 at ¶ 22. This paragraph is incorporated by reference into Mr. Buchicchio's false imprisonment claim.  *Id.* at ¶ 126.  To state a claim for false imprisonment, Mr. Buchicchio must allege merely that he was detained by the defendant and that detention was unlawful. *See McNeal v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-736, 2022 WL 1144826, at *4 (M.D. La. Apr. 18, 2022) (false imprisonment "consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention.")  Mr. Buchicchio alleges that he has been unlawfully detained by LeBlanc's department on at least three occasions, including after he was ordered released on January 17, 2020, and from March 3rd to May 25th, 2021.  Even though this false imprisonment claim only concerns his March 3 to May 25, 2021, Mr. Buchicchio's reference to his prior January 17, 2020 imprisonment emphasizes the repeated nature of LeBlanc's indifference to lawful court orders such that Mr. Buchicchio should have been permanently set free in January 2020. Regardless of this additional reference to his January 2020 detention, Mr. Buchicchio sufficiently states a cause of action for his March to May 2021 false imprisonment.

As to Mr. Buchicchio's negligence claim, LeBlanc's argument similarly ignores the detailed factual allegations showing that LeBlanc was negligent.  In this context, Mr. Buchicchio

need only allege "enough factual matter to support a reasonable inference that LeBlanc breached the duties he owed as the DPSC Secretary to Plaintiff and other inmates by implementing policies that were a legal cause of Plaintiff's over-detention." *McNeal*, 2022 WL 1144826, at *5 (denying LeBlanc's motion to dismiss plaintiff's state law negligence claim).  Here, Mr. Buchicchio alleges that LeBlanc breached his duties by permitting DOC's practice of delayed time computations to continue unabated, which extended Mr. Buchicchio's detention well beyond his lawful release date. Specifically, Mr. Buchicchio alleges (as cited above) many examples of LeBlanc being notified of the timely computation issue and its effects, and LeBlanc failing to act on each occasion knowing full well that his failure to act would cause inmates like Buchicchio to be overdetained in the future.  Because these facts support a reasonable inference that LeBlanc breached his duties owed to Buchicchio and other inmates, the complaint states a cause of action for negligence.

## II.    Mr. Buchicchio Has Standing to Request Declaratory and Injunctive Relief.

LeBlanc argues that the Court lacks Art. III jurisdiction to address portions of Mr. Buchicchio's requested relief, namely his request for a declaratory judgment finding unlawful Defendant Leblanc's failure to correct DOC's time computation problems, and for injunctive relief ordering Defendant LeBlanc to stop his deliberate indifference toward Buchicchio and other inmates rights to timely release.   However, federal law allows Mr. Buchicchio standing to request both forms of relief because Defendant LeBlanc and DOC's refusal to correct their time computation problems have subjected Mr. Buchicchio to repeated – and foreseeably, future – unlawful detention.

In simple terms, the fact that Mr. Buchicchio filed this suit after he was released does not defeat his standing to pursue equitable relief.  Mr. Buchicchio requests declaratory and injunctive relief in this case because he has been repeatedly overdetained, and there is a real threat that he

18

will be overdetained again without court intervention.  As Judge deGravelles explained in *McNeal v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-736, 2020 WL 7059581 (M.D. La. Dec. 2, 2020) a "plaintiff seeking injunctive relief based on an alleged past wrong must show there is a real or immediate threat that he will be wronged again."  *McNeal*, 2020 WL 7059581, at *9 (citing *Plumley v. Landmark Chevrolet*, 122 F.3d 308, 312 (5th Cir. 1997)).  In other words, a plaintiff who is no longer overdetained has sufficient standing if the plaintiff "faces a threat of future harm or repeated injury." *McNeal*, 2020 WL 7059581, at *9 (citing *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015)).  Past wrongs can be considered, however, as evidence of an actual threat or repeated injury.  *McNeal*, 2020 WL 7059581, at *8 (citing *Perez*, 624 F. App'x at 183).

In *McNeal*, Judge deGravelles found that an overdetained plaintiff lacked standing to request equitable relief because his complaint did not "allege any facts that suggest" Plaintiff could be overdetained in the future.  In that case, the court looked beyond the allegations in the complaint, and found that four hypothetical scenarios had to occur for the plaintiff to be overdetained in the future - "(1) he is arrested again; (2) he is convicted of the crime; (3) he is sentenced to the DOC custody; and (4) he is detained beyond that sentence absent any other legal reason to hold him." *McNeal*, 2020 WL 7059581, at *10.

Here, there is a demonstrated, legitimate threat that Mr. Buchicchio will be overdetained again because, unlike *McNeal*, Mr. Buchicchio has been *repeatedly* overdetained for the same offense.  Mr. Buchicchio's complaint alleges at least three separate periods of overdetention, without committing any new offenses, including two overdetentions that occurred after he was released from prison.  Doc. 21, ¶¶ 44-80.  Mr. Buchicchio was first overdetained in early 2020 when his jailers failed to account for an order from Judge Doggett granting him credit for time

served.  His time calculation was then changed again after his release, he was rearrested, and overdetained a second time for nearly nine months.  Then, Buchicchio's jailers again ignored a court order entitling him to release, and overdetained him for a third time spanning nearly three months until outside counsel pled for his release.  In fact, though it is admittedly not a part of Mr. Buchicchio's amended complaint, Mr. Buchicchio was recently detained *again* for approximately one week in his home state of Florida because Louisiana's DOC failed to update a national database to show Mr. Buchicchio has served his sentence and was lawfully (albeit belatedly) released.  At this point, Buchicchio has every indication that there is an intractable problem with DOC's time computation system that continues to threaten his freedom.

Accordingly, there is a real threat that Mr. Buchicchio will overdetained again due to DOC's time computation problems.  Whereas the court in *McNeal* found that a chain of four events had to occur before Mr. McNeal would be at risk of additional overdetention, here there is only one event needs to occur before Mr. Buchicchio is destined for another period of overdetention.  That event – DOC records erroneously reflecting that Mr. Buchicchio's time has not expired despite a clear judicial decree to the contrary – is real and immediately foreseeable as it has occurred again and again over the past two years.  In fact, given Mr. Buchicchio's recent detention in Florida upon DOC's error, it is likely that DOC has failed to correct every record that reflects DOC's time computation errors for Mr. Buchicchio, which means that Mr. Buchicchio's could be unlawfully detained again at any time.  Accordingly, Mr. Buchicchio has standing to pursue equitable and declaratory relief.

### III.    Mr. Buchicchio's Official Capacity Claims Against LeBlanc Are Not Barred by Sovereign Immunity.

Mr. Buchicchio's complaint is specific that its only official capacity claims against LeBlanc are for (1) "prospective declaratory relief against Defendant LeBlanc… for violations of

federal law", and (2) "a prospective permanent injunction pursuant to federal law requiring Defendant LeBlanc… to end DOC's practice of overdetention."  Doc. 21 ¶¶ 152(a), 152(g). LeBlanc's Motion asks the Court to find that he is shielded from these equitable claims made against him in his official capacity pursuant to sovereign immunity.  Yet, LeBlanc's Motion admits that such claims are permitted where they are (1) "brought against state officers who are acting in their official capacities," (2) seeking "prospective relief to redress ongoing conduct," and (3) alleging a violation of federal law.  Doc. 28-1, p. 3 (citing *Williams v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020)).  Buchicchio's official capacity claims against LeBlanc precisely fit this exception and thus are permitted pursuant to the Eleventh Amendment. *See also Babin v. Breaux*, No. 10-368, 2013 WL 12122409, at *6 (M.D. La. Mar. 19, 2013) (finding no sovereign immunity bar for "prospective, injunctive relief for a continuing violation of federal law"), *aff'd*, 587 F. App'x 105 (5th Cir. 2014).

LeBlanc only argues that Mr. Buchicchio's complaint fails to satisfy the second prong of the above-described exception; the requirement that Buchicchio seek "prospective relief to redress ongoing conduct."  LeBlanc's Motion again looks past the Buchicchio's complaint and its voluminous allegations, and instead asserts that Buchicchio merely alleges past violations of federal law and does not complain that LeBlanc is currently violating federal law.

Again, LeBlanc's conclusion is incorrect. Mr. Buchicchio repeatedly alleges that LeBlanc continues to violate federal law by failing to correct DOC's time computation system or otherwise taking any action that would lead DOC to accurately record its inmates release dates. Doc. 21 ¶ 119 ("DOC (under LeBlanc's leadership) continues to persist in this illegal overdetention of individuals"); *see also id.* at ¶ 105 (unlawful detentions caused by time computation delays and errors "continues to the current day"), *Id.* at ¶ 102 (continuing "to the present," LeBlanc has not

disciplined anyone at DOC for overdetention), *Id.* at ¶ 103 (LeBlanc "has never set a goal" of ending overdetention at DOC), *Id.* at ¶ 104 (LeBlanc admits that there continues to be no "system in place" to stop overdetention of inmates after court's order them released).

Moreover, as explained above, Buchicchio has been subjected to multiple periods of overdetention by DOC, so DOC's persistent refusal to follow federal law exposes him to the real and immediate threat that he will be unlawfully detained again. *See also id.* at ¶ 106 ("finding no remedy elsewhere, Petitioner has initiated this action…")    According to Mr. Buchicchio's allegations, DOC's current system has unlawfully kept potentially thousands of inmates incarcerated beyond their release dates, continues to wrongfully overdetain inmates to this day, and may recapture him for further overdetention at any time.    Accordingly, Mr. Buchicchio has alleged an ongoing violation of federal law that LeBlanc may not escape via the doctrine of sovereign immunity.

**WHEREFORE**, after due proceedings, Mr. Buchicchio respectfully requests that the Court deny Defendant's Motion to Dismiss. If, however, this Court finds that the allegations in Mr. Buchicchio's complaint are insufficient, Plaintiff asks for leave to amend his complaint so that he may further add to or clarify his claims.

Respectfully submitted:

*/s/ Jacob K. Weixler*
Jacob K. Weixler, 36076
WEIXLER LAW LLC
P.O. Box 52197
New Orleans, Louisiana 70152-2197
1926 Washington Ave.
New Orleans, Louisiana 70113-1730
Tel:    (504) 408-2180
Fax:    (504) 814-1728
jkw@weixlerlaw.com

*-AND-*

*/s/ William Most*
William Most (La. Bar No. 36914)
Caroline Gabriel (La. Bar. No. 38224)
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com

*Attorneys for Plaintiff*