UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NICHOLAS BUCHICCHIO | * | CIVIL ACTION |
| | * | |
| | * | NO.: 3:22-cv-00147-BAJ-EWD |
| VERSUS | * | |
| | * | JUDGE BRIAN A. JACKSON |
| JAMES LEBLANC, KIRT GUERIN, | * | |
| CHELSEA JONES, STEVEN JUGE, | * | MAGISTRATE JUDGE |
| MIKE CAZES, AND DOES 1-10 | * | ERIN WILDER-DOOMES |

**************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes Defendant, James LeBlanc, individually and in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, who respectfully files this memorandum in support of his motion for summary judgment. Secretary LeBlanc is entitled to qualified immunity because: (1) it cannot be disputed that Secretary LeBlanc's policies or trainings did not *cause* Bucchicio to be "overdetained;" (2) Secretary LeBlanc did not act deliberately indifferent. Further, Plaintiff is not entitled to prospective relief, and LeBlanc is entitled to immunity for any state law claim.

**I.    Factual Background**

**A. For a Decade-Plus, Secretary LeBlanc Has Improved Louisiana Prisons Dramatically.**

For sixteen years and across three administrations, Secretary LeBlanc had served as the Secretary of the Louisiana Department of Public Safety & Corrections (DPS&C). During his tenure, Secretary LeBlanc prioritized reducing recidivism through vocational, educational, and life skills training for offenders.[1]

---

[1] Secretary James M. LeBlanc, Louisiana Correctional Association, https://lacorrectional.org/sec-leblanc-bio

1

To that end, Secretary LeBlanc commissioned a 2012 study to examine and measure DPS&C workflow and effectiveness.[2] The study was called "Lean Six Sigma" based on the now-famed Toyota, Motorola, and General Electric business strategies to reduce or eliminate undesired variations in business processes.[3] So too could it be done with Louisiana prisons under Secretary LeBlanc's leadership: The study identified and offered improvements for backlogs in sentence-calculation processes including re-organization measures for DPS&C's Pre-classification Department, which handles time computations and releases for offenders sentenced to DPS&C custody.[4]

In response to the study, Secretary LeBlanc implemented every recommended measure, including centralizing the Pre-classification Department to headquarters, working with local facilities and the Louisiana Supreme Court to streamline communications, spending millions to create a new computer system to replace CAJUN, implementing a digital filing system, and standardizing pre-classification and time-computation procedures.[5]

Secretary LeBlanc also chaired the 2016 Louisiana Justice Reinvestment Task Force to conduct an in-depth study of Louisiana's criminal justice system at large.[6] His chairship led to a ten-bill legislative package—the largest criminal justice reform in the State's history—which in turn led to an additional 34% reduction in Louisiana's prison population.[7] And again in 2017, Secretary LeBlanc answered the call to duty: this time from the Louisiana Supreme Court to update Louisiana's Uniform Commitment Order to pass legislation "to improve communication between

---

[2] Exhibit. 1, LSS Study.
[3] *See, e.g., How AI Fits into Lean Six Sigma*, Harv. Bus. Rev. (Nov. 2023), https://hbr.org/2023/11/how-ai-fits-into-lean-six-sigma.
[4] Exhibit 1, LSS Study
[5] Exhibit 2, Deposition of LeBlanc, pg. 53-54
[6] *See* Exhibit 13, Louisiana Justice Reinvestment Task Force Report and Recommendations (Mar. 16, 2017).
[7] *See* Criminal Justice, 2017 La. Sess. Law Serv. Act 280 (S.B. 139).

the sentencing judge and DPS&C."[8]

For his efforts, Secretary LeBlanc's peers across the country honored him with the Correctional Leaders Association's Tom Clement Award for his commitment to correction reform through vision, dedicated mission, progressive reform, and outstanding innovations that improve the corrections profession.[9] As former-Governor John Bel Edwards put it, Secretary LeBlanc "has proven himself as an innovative leader in corrections and his experience and knowledge has been instrumental in the historic criminal justice reforms that have taken place in Louisiana over the past several years."[10]

### B. Buchicchio Commits Theft in Louisiana While On Probation for a Florida Conviction

In 2017, Buchicchio was living in Rapides Parish, Louisiana, while on probation for a Florida felony conviction. R.Doc. 21, ¶¶ 33–34. But he violated his probation in March of that year, when he was arrested for committing felony theft. R.Doc. 21, ¶ 34. His probation was revoked, and he was extradited to Florida to serve his sentence on the Florida conviction. R.Doc. 21, ¶ 35. He remained in the custody of the Florida Department of Corrections until May 2019.

### C. Buchicchio Pleads Guilty to 10 Counts of Felony Theft, Receives a Seven-Year Prison Sentence, and is Released in Error by East Baton Rouge Parish Prison

Buchicchio completed his Florida sentence in May 2019. R.Doc. 21, ¶¶ 36–37. He was then sent back to Rapides Parish for proceedings on the 10 felony-theft charges that caused his probation to be revoked.

Plaintiff pled guilty to the 10 felony-theft charges on January 16, 2020, and he was

---

[8] Exhibit 2, Deposition of LeBlanc, pg. 77.
[9] *See* Exhibit 14, Jacqueline DeRobertis, Louisiana corrections secretary Jimmy LeBlanc honored with innovation award (Nov. 21, 2019).
[10] *Id.*

3

sentenced to serve seven years of hard labor.[11] The Uniform Commitment Order stated that credit for time served was to be applied pursuant to Article 880, which means that Plaintiff would only get credit for time served on that specific charge.[12]

On February 24, 2020, DPS&C received a partial pre-class packet from Rapides Parish, which did not include the AFIS print and photograph.[13] On February 27, 2020, DPS&C was notified that East Baton Rouge Parish released Plaintiff in error because they purportedly were unaware that he received a DPS&C sentence.[14] On February 28, 2020, Plaintiff's time computation was performed. The Jail Credit letter from Rapides Parish listed time in custody from May 8, 2019, to January 16, 2021, giving Plaintiff 253 days of jail credit.[15] Plaintiff's good time release date was October 17, 2021.[16] Because Plaintiff had not served his seven-year sentence, Plaintiff was listed as released in error in the CAJUN system.[17] A warrant was issued and Plaintiff was taken back into custody on June 20, 2020.[18] Despite the fact that the 130 days that Plaintiff was out of custody should have been added to Plaintiff's time computation, Plaintiff's release date remained October 17, 2021.

While Plaintiff did not file an ARP,[19] Bucchichio did receive a letter from an ARDC Specialist at Elayn Hunt on August 17, 2020 explaining that the jail credit letter from Rapides Parish Sheriff provided the number of days of jail credit, namely 253 days.[20]

---

[11] Exhibit 3, PreClass Packet, UCO, p. 7, bates 906.
[12] Id., See also Code of Criminal Procedure Article 880, Exhibit 4, DPS&C discovery responses.
[13] Exhibit 5, DPS&C deposition, p. 51.
[14] Exhibit 5, DPS&C Deposition, p. 99; Exhibit 3, p. 3, February 27, 2020 Email, bates 902.
[15] Exhibit 5, DPS&C Deposition, p. 52-53.
[16] Exhibit 5, DPS&C Deposition, p. 99-100.
[17] Exhibit 4, DPS&C discovery responses.
[18] Exhibit 5, DPS&C deposition, p. 103.
[19] Exhibit 4, DPS&C discovery responses.
[20] Exhibit 6, August 17, 2020 letter.

4

### D. Buchicchio Receives an Amended Sentence, Specially Allowing Credit for Time Served While on Serving Time on his Florida Sentence But the Clerk of Court Fails to Provide the Amended Minutes to DPS&C

In September 2020, Plaintiff filed a motion to clarify sentence.[21] He sought to amend/clarify his sentence so that the judge stated that he would receive credit for time served while he was on detainer and serving time in Florida on his probation violation. The hearing was originally set for November 20, 2020. Bucchichio filed a motion within the court explaining that due to COVID-19 restrictions, DPS&C was not providing court transports and would only conduct hearings via Zoom.[22] Nothing in the Court record nor DPS&C records indicate that the Ninth District Court provided Zoom access for the November 20, 2020 hearing.[23] The Court minutes from November 20, 2020, reflect the hearing was reset for February 22.[24] On February 22, 2021, the Court, on its own motion, continued the hearing on the motion to clarify sentence to March 3, 2021.[25]

At the March 3, 2021 hearing, the district attorney did not object to the motion and in open Court, Judge Doggett entered amended minutes, specifically ordering credit for time served from October 16, 2017 to May 7, 2019.[26] However, the Rapides Parish Clerk of Court did not send these supplemental minutes to DPS&C following the hearing.[27] DPS&C was not notified by the Rapides clerk, the sheriff's office, or Plaintiff that the sentence was amended.[28] Plaintiff did not file an ARP regarding the March 3, 2021 amended minutes.[29]

---

[21] Exhibit 8, Rapides Court record, p. 47-48, bates 00591-00592.
[22] Exhibit 8, Rapides Court record, p. 54, 61.
[23] Exhibit 4, DPS&C discovery responses.
[24] Exhibit 8, Rapides Court record, p. 5.
[25] Exhibit 8, Rapides Court record, p. 5.
[26] Exhibit 7, Transcript.
[27] Exhibit 5, DPS&C deposition, p. 30-31; 123-124.
[28] Exhibit 5, DPS&C deposition, p. 87; Exhibit 9, 30(b)(6) Deposition of Juge, p. 17-18.
[29] Exhibit 4, DPS&C discovery responses.

5

On May 21, 2021, at 4:23 on a Friday afternoon, counsel for Plaintiff sent DPS&C counsel an email asserting that Bucchchio received an amended sentence in March and that he was entitled to release.[30] On Monday, May 24, 2021, DPS&C counsel advised that DPS&C has not received a copy of the minutes from the March hearing.[31] DPS&C staff reached out to Rapides Clerk of Court to determine whether an order was signed in March 2021.[32] DPS&C reached out to the clerk, who provided the minutes, with a date of May 24, 2021.[33] On May 25, 2021, Plaintiff was released.

After Plaintiff was released, he worked in the Caribbean until 2023, when he moved to Arkansas, where he currently lives.[34]

### E. Buchicchio sues Secretary LeBlanc and Other for Deliberate Indifference

Nine months after his release, Buchicchio sued Secretary LeBlanc, West Baton Rouge Transitional Work Facility Chief of Corrections Juge, and West Baton Rouge Parish Sheriff Cazes. R.Doc. 21. Against Secretary LeBlanc, Buchicchio brought individual-capacity claims for damages, and he requested two forms of equitable relief:

- Section 1983. Buchicchio alleged that "Defendants" are liable under § 1983 for violating his due-process rights by keeping him confined after the judge allegedly ordered him released.

- Failure to Train/Supervise. Against Secretary LeBlanc only, Buchicchio brought a "failure to train/supervise" claim. He alleges the Department has a policy of "regularly overdetain[ing] persons who are subject to release," and that Secretary LeBlanc "exhibited deliberate indifference to the problem." R.Doc. 21 ¶¶ 142–45. And he says Secretary

---

[30] Exhibit 10, Email chain.
[31] *Id*.
[32] Exhibit 10, Email.
[33] Minutes dated May 24, 2021.
[34] Exhibit 11, Deposition of Plaintiff.

6

LeBlanc allowed "the widespread practices" described in the complaint "to flourish" because Secretary LeBlanc allegedly "declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents." R.Doc. 21 ¶¶ 142–45.

- Equitable Relief. Buchicchio requested "[p]rospective declaratory relief against [Secretary] LeBlanc in his individual and official capacities for violations of federal law." R.Doc. 21, ¶ 152(a). And he requested "[a] prospective permanent injunction pursuant to federal law requiring [Secretary] LeBlanc in his individual and official capacities to end DOC's practice of overdetention."

- State law claims for negligence and false imprisonment.

## II.  Legal Standard

The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023). A dispute over a fact is "material" if it "might affect the outcome of the suit under the governing law." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). The dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Because Secretary LeBlanc "invoke[d] qualified immunity," Plaintiff bears "the burden 'to show that the defense is not available, though [the court] still draw[s] all inferences in [his] favor.'" *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864 (5th Cir. 2022). In other words, Plaintiff "must rebut" both prongs of the defense: "whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To do so, Plaintiff must "identify specific evidence

7

in the summary judgment record." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016). If Plaintiff fails to meet his burden, summary judgment is proper. See *Jason v. Tanner*, 938 F.3d 191, 199 (5th Cir. 2019).

### III. Secretary LeBlanc is Entitled To Qualified Immunity

#### A. Qualified immunity

Buchicchio cannot overcome Secretary LeBlanc's qualified immunity defense at the summary judgment stage. To defeat qualified immunity, Buchicchio has the burden to prove that Secretary LeBlanc violated Buchicchio's Fourteenth Amendment rights by deliberately indifferently failing to adopt policies or train his subordinates in a way that would have prevented Buchicchio's specific (alleged) overdetention.

Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from civil liability for damages if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Flores v. City of Palacios*, 381 F.3d 391, 393-394 (5th Cir. 1984). The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit. *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Actions and decisions made by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999). The defense of qualified immunity must be resolved at the earliest possible stage of litigation since it entails an immunity

from suit and entitlement not to stand trial or face other burdens of litigation. *Pearson v. Callahan* 555, U.S. 223, 232 (2009).

The qualified immunity defense has two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff; and (2) whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir.2009). A court may rely on either prong of the defense in its analysis. *Id.*

As to the first prong, **s**upervisors are not liable for constitutional violations caused by their subordinates: There is no vicarious liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Nor is a supervisor liable for constitutional violations caused by third parties he does not control. *Grant v. LeBlanc*, No. 21-30230, 2022 WL 301546, at *6–7 (5th Cir. Feb. 1, 2022) (per curiam) (reversing the denial of qualified immunity and rendering judgment for Secretary LeBlanc because the alleged overdetention "was caused by external entities—not the Secretary").

Supervisory officials can only be found liable under § 1983 if their failure to adopt policies or failure to train causally results in a constitutional injury. Further, both failure to promulgate policy and failure to train, a showing of deliberate indifference is required, else "de facto respondeat superior liability" would result. *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) "[D]eliberate indifference is a stringent standard of fault". *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). It does not amount to mere "inept, erroneous, ineffective, or negligent" conduct, but instead "more than negligence or even gross negligence". *Estate of Davis*, 406 F.3d at 381.

### B. It Is Undisputed Secretary LeBlanc's Policies or Trainings Did Not Cause Bucchicio to Be "Overdetained."

As the Fifth Circuit has previously held, Secretary LeBlanc is entitled to qualified immunity in "overdetention" cases when the alleged "overdetention" was caused by outside

9

entities to which Secretary LeBlanc has no control over, namely the clerk's offices. In *Grant v. LeBlanc*, No. 21-30230, 2022 WL 301546, at *7 (5th Cir. Feb. 1, 2022), plaintiff brought a § 1983 against Secretary LeBlanc asserting that he was overdetained for 27 days after receiving a sentence for time served. The issue causing the delay in Grant was the clerk's failure to send DPS&C the bill of information, which was necessary to lift the parole hold. Secretary LeBlanc filed a motion for summary judgment on qualified immunity. The Fifth Circuit held that Secretary LeBlanc was entitled to qualified immunity, holding that Secretary LeBlanc has no authority over the clerk's office, who failed to timely provide the bill of information.

The same reasoning applies here. Buchicchio's detention beyond March 3 resulted from the clerk of court's failure to provide DPS&C the minutes from the March hearing. It was the Rapides Clerk of Court's responsibility to provide the amended sentence, also known as supplemental paperwork, to DPS&C. The clerk could have emailed or mailed the amended sentence to DPS&C, or it could have provided it to the facility where Buchicchio was housed, who would in turn provide it to DPS&C.[35] However, the clerk failed to provide these minutes to DPS&C until May 24, 2021, after DPS&C requested the minutes.[36]

Plaintiff fails to show that Secretary LeBlanc failed to promulgate a policy that causally resulted in the constitutional injury the Plaintiff complains of. It cannot be disputed that the alleged overdetention was caused by the failure of the Rapides Clerk of Court's failure to provide the amended sentencing minutes from the March 3 hearing to DPS&C until May 24, 2021.

Likewise, nothing about Secretary LeBlanc's trainings *caused* the Buchicchio's claimed "overdetention" violation. To be held liable for a failure to train, Buchicchio must prove Secretary LeBlanc had "actual or constructive notice" that an action of his department led to particular

---

[35] DPSC Deposition, p. 40; 117-118.
[36] DPSC Deposition, p. 31.

constitutionally unallowable consequences such that "a particular omission in their training program *causes* [the] employees to violate citizens' constitutional rights." *Porter*, 659 F.3d at 447 (citing *Connick*, 563 U.S. at 61) (emphasis added). But that evidence is lacking here. Plaintiff has failed to identify any lack of training of DPS&C employees that would have prevented *an outside entity* from failing to provide DPS&C with amended sentencing minutes.

Moreover, the record actually demonstrates Secretary LeBlanc's trainings had instilled in DPS&C employees a premium on identifying and curing any supposed errors in the length of detentions. Far from evident indifference, from the moment Buchicchio's attorney raised the issue to DPS&C counsel, DPS&C advised that the clerk had not sent the minutes to DPS&C, DPS&C employees reached out to the clerk to obtain a copy of the minutes. And in less than a day, after receiving the minutes, Buchicchio was released altogether. As a result, the evidence conclusively proves that Secretary LeBlanc's trainings could not have caused Buchicchio's purported "overdetention."

### C. It Is Undisputed Secretary LeBlanc Did Not Act Deliberately Indifferent.

"Deliberate indifference is a stringent standard of fault, requiring proof that the official disregarded a known or obvious consequence of his action." *Porter*, 659 F.3d at 446–47 (cleaned up). To satisfy that high bar, Buchicchio must identify "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. The violations must be "very similar" to "jointly form a pattern." *Jason*, 938 F.3d at 198 (citing *Connick*, 563 U.S. at 62). "Otherwise," as Judge Duncan explained, "a supervisor would not be on notice of a flaw in the agency's training program, nor would he have any idea how to change the training to fix the problem." *McNeal*, 90 F.4th at 436 (Duncan, J., concurring in judgment); *see also Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 518 (5th Cir. 2022) (Ho, J., concurring). Such "cabining" to a high evidentiary

11

standard prevents courts from employing a "standard 'less stringent' than deliberate indifference" that "'would result in *de facto respondeat superior* liability.'" *Porter*, 659 F.3d at 447 (quoting *Connick*, 563 U.S. at 62).

Plaintiff relies heavily on the Lean Six Sigma Study conducted in 2012 to assert that Secretary LeBlanc was on notice of overdetention. While it is disputed that the study could put Secretary LeBlanc on notice of overdetention caused by the clerk's failure to provide DPS&C with amended sentencing minutes, Secretary LeBlanc was not indifferent to the study's findings; quite the opposite: He implemented *every recommendation* in the Lean Six Sigma study.[37] He worked vigorously for legislation to *minimize* instances of exceedingly long detentions for inmates.[38] And he acted upon the Louisiana Supreme Court's call to close the gaps between DPS&C and state criminal courts for precisely these issues.[39] The evidence surrounding the Lean Sigma Six study only undercuts the claims of Secretary LeBlanc's deliberate indifference.

While DPS&C is not able to force third-parties to provide paperwork timely, its work to identify and address these issues is the antithesis of deliberate indifference. Some of these steps include:

- Following the LSS Study, the pre-classification department in the Department of Corrections was centralized into DOC Headquarters in Baton Rouge.
- In response to the LSS Study, DPS&C also attempted have legislation passed to mandate a time period for the clerks and sheriffs to provide the Pre-Class packet to DPS&C. This legislation did not pass.
- Worked with Supreme Court to develop the UCO template and require in statute that judges use the Uniform Commitment Order (UCO) to document and provide conviction

---

[37] Exhibit 2, Deposition of LeBlanc, pg. 22-30.
[38] See Louisiana Justice Reinvestment Task Force Report and Recommendations (Mar. 16, 2017), https://gov.louisiana.gov/assets/docs/Issues/Criminal-Justice/Justice-Reinvestment-Task-Force-Report_2017.pdf; See Criminal Justice, 2017 La. Sess. Law Serv. Act 280 (S.B. 139).
[39] Exhibit 2, Deposition of LeBlanc, pg. 78.

and sentencing information.

- Opened a second reception center at Raymond LaBorde Correctional Center.
- Proposed Felony Class system as a part of the 2017 JRI Legislative package; due to pushback – this was removed and turned into a Felony Class Taskforce.
- Development of Customized Data Management System.
- Created and incorporated training manual and classes for the pre-class division staff at HQ.
- Provide training at the sheriff's/wardens conferences regarding the paperwork process.
- Provided training at the Louisiana Judicial College to assist with implementing consistent sentences.
- Solicited the passage of HSCR 1 of 2020 Rep Katrina Jackson – to commence study committee.
- Established new type of position in Pre-class – time computation review and auditing.
- Implemented a secondary review of time computations/intake and a post-release file review to further identity/reduce errors.
- Spearheaded multiple meetings with clerks of court/sheriffs/Supreme Court in attempt to address multi-party issues.
- In 2019, DPS&C applied for a grant with the Department of Justice. DPS&C sought funds to assist with obtaining the documents required under the law to perform a time computation from the local jails after prisoners were sentenced to DPS&C time. DPS&C was not awarded the grant.
- Filed legislation in 2020 session to require that sheriffs and clerks of court provide statutorily required sentencing paperwork to DPS&C within a 14 day time period. (bill was not heard due to COVID-19).
- During the 2021 Legislative Session, the Department of Corrections attempted to have two separate bills introduced to assist it in the time computation process. Neither bill was successfully passed.
- DPS&C revised a department regulation that requires identification of offenders who are potential immediate releases, and gives those offenders priority for time computation. If immediate release offenders are not released within two days of DPS&C receiving the

   paperwork, the Pre-Class employees must create a case narrative to explain the problems encountered during the time computation process.

- Developed and implemented new Offender Management System.
- Developed and deployed a state-wide electronic document submission portal to allow local facilities to upload paperwork directly to DPS&C.
- Created a Preclass Compliance and Auditing section, comprised of 5 positions and a compliance audit manager.
- Continue to update and implement new training, including a new onboarding process and well as continued training of employees.[40]

As stated by the Fifth Circuit in denying qualified immunity on Rule 12 motions in other cases, "[w]hat LeBlanc may have done to comply with his supervisory obligations is not yet part of the record." *Parker v. LeBlanc*, 73 F.4th 400, 406 (5th Cir. 2023). Now it is. Leblanc's continued steps to address these issues are a far cry from deliberate indifference. LeBlanc is entitled to qualified immunity.

### IV. Plaintiff is Not Entitled to Prospective Relief

In order to show entitlement to prospective injunctive relief, Plaintiff must demonstrate a deprivation of constitutional rights pursuant to an official state policy. *Decker v. Dunbar*, 358 F. App'x 509, 511 (5th Cir. 2009). As discussed above, Plaintiff cannot show that his alleged overdetention was *caused* by any of DPS&C's policies.

Further, Buchicchio lacks standing for any prospective relief. Buchicchio "must meet the initial 'requirement imposed by Article III of the Constitution by alleging an actual case or controversy.'" *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). That case-or-controversy

---

[40] Exhibit 4.

requirement demands that Buchicchio "establish standing to sue." *Id*. "To establish standing," Buchicchio "must demonstrate an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id*. (quotation omitted).

Of course, "[t]he type of relief sought also bears on whether the plaintiff has standing." Id. (citing *Lyons*, 461 U.S. at 103). Here, because Buchicchio seeks prospective equitable relief, Buchicchio "must demonstrate continuing harm or a 'real and immediate threat of repeated injury in the future.'" *Id*. (quoting *Society of Separationists, Inc. v Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)). "The threat of future harm [to Buchicchio] must be 'certainly impending'; mere "[a]llegations of possible future injury' do not suffice." *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Past wrongs are relevant to 'whether there is a real and immediate threat of repeated injury,' but alone they may be insufficient to establish standing for prospective relief." *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Equitable-relief standing is especially tough to establish where, as here, the alleged future harm depends on criminal misconduct. After all, the standing analysis requires federal courts to "assume[] 'that plaintiffs will conduct their activities within the law.'" *Lyons*, 461 U.S. at 103 (quoting *O'Shea*, 414 U.S. at 497 (brackets omitted)).

Buchicchio cannot carry his burden of showing an injury in fact because he cannot establish a "real and immediate threat" that he will again be overdetained in the Department's custody. See *Lyons*, 461 U.S. at 105; *O'Shea*, 414 U.S. at 496; *Evans*, 37 F.4th at 1043–44; *Williams*, 2023 WL 119452, at *5–6. And the risk that Buchicchio will again be overdetained in the Department's custody is neither "real" nor "immediate." Buchicchio lives in Arkansas. He has been out of the Department's custody for more than four years. When he sued, he had been out of the Department's

15

custody for over nine months. His future overdetention depends on a "speculative chain of possibilities" that cannot confer standing. *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper*, 568 U.S. at 410).

Buchicchio's reliance on his extradition from Florida in 2020 is misplaced. When Buchicchio's time was calculated in February of 2020, based on the UCO signed by the judge, and the jail credit letter provided by Rapides Sherriff, Buchicchio's release date was October 17, 2021. Buchicchio still had time to serve when he was released in error by East Baton Rouge. Buchicchio has now served in time on his Louisiana felony convictions, and any alleged threat of future overdetentions is purely speculative.

## V.     Plaintiff's state law claims are barred by La. Rev. Stat. § 9:2798.1.

Plaintiff also cannot sustain his state law claims against Secretary LeBlanc. First, by his own admission, Plaintiff attacks the policies and trainings offered by Secretary LeBlanc. But Louisiana law precludes liability "on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Rev. Stat. § 9:2798.1. Secretary LeBlanc's actions in promulgating policies and trainings within his lawful duties as Secretary of DPS&C fall squarely within Louisiana's discretionary immunity. So Secretary LeBlanc is immune from the state-law claims.

## VI.    Conclusion

On this record, there are no genuine disputes of material fact precluding judgment as a matter of law in Defendant's favor, the Court should grant Defendant's summary judgment.

        Respectfully submitted,

        **LIZ MURRILL**
        **Attorney General**

By:    s/Andrew Blanchfield
        Andrew Blanchfield, T.A. (#16812)
        Email: ablanchfield@keoghcox.com
        Collin J. LeBlanc (#24519)
        Email: cleblanc@keoghcox.com
        Christopher K. Jones (#28101)
        Email: cjones@keoghcox.com
        C. Reynolds LeBlanc (#33937)
        Email: rleblanc@keoghcox.com
        Catherine S. Giering (#26495)
        Email: cgiering@keoghcox.com
        Chelsea A. Payne (#35952)
        Email: cpayne@keoghcox.com
        Special Assistant Attorneys General
        701 Main Street (70802)
        Post Office Box 1151
        Baton Rouge, Louisiana 70821
        Telephone: (225) 383-3796
        Facsimile: (225) 343-9612

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, and a copy of the above and foregoing was this day forwarded by the Court's ECF Delivery System to all counsel of record.

Baton Rouge, Louisiana, this 3rd day of November, 2025.

        s/Andrew Blanchfield
        Andrew Blanchfield